John Boyd CHASTAIN, Jr., Administrator of the Estate of Marilyn Gail Chastain, deceased, Appellant,

v.

LITTON SYSTEMS, INC., Appellee.

No. 81–2034.

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1982.

Decided Dec. 2, 1982.

Rehearing Denied Jan. 4, 1983.

Herbert L. Hyde, Asheville, N.C. (Herbert L. Hyde, P.A., Asheville, N.C., on brief), for appellant.

Landon Roberts, Asheville, N.C. (Roberts, Cogburn & Williams, Asheville, N.C., on brief), for appellee.

Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and JAMES C. CACHERIS, District Judge for the Eastern District of Virginia, sitting by designation.

BUTZNER, Circuit Judge:

The administrator of the estate of Marilyn Gail Chastain, deceased, appeals from the district court's grant of summary judgment dismissing his wrongful death claim against Litton Systems, Inc.[1] We vacate the order of dismissal and remand the case for trial.

I

George Beck, a Litton employee, drove through a red traffic light and struck the car Chastain was driving. Earlier in the day, Beck had attended a Christmas party that Litton sponsored for 861 of its employees. The affair, held on Litton's premises, began at approximately 8:00 a.m. and continued during normal working hours. All of the employees were required to check in by 8:00 a.m. in order to be paid for that day, but they could leave at any time. At Litton's machine shop Beck and other employees drank alcoholic beverages, and a number of them became intoxicated.

Summarizing the evidence in the light most favorable to Chastain, the district court stated:

[T]he evidence shows that Litton through its employees furnished alcohol to Beck, allowed him to become intoxicated and knowingly permitted him to leave in his van in the intoxicated state. Thereafter, within one hour and twenty minutes and several miles from Litton's plant, Beck while operating his own motor vehicle collided with a motor vehicle occupied by [Chastain] causing injuries from which [she] died. 527 F.Supp. at 531.[2]

For the purpose of deciding the motion for summary judgment, the district court defined the issue as: "[W]hether a social host who gratuitously furnishes alcohol to an able-bodied adult is liable for personal injuries and death inflicted on an innocent third party by that intoxicated adult." It noted that the complaint did not allege "that Litton was in the business to sell or distribute alcoholic beverages for pecuniary profit." Consequently, it held that "Litton is at worst a social host providing its employees with Christmas cheer and hospitality." 527 F.Supp. at 530–31.

After establishing Litton's status, the district court ruled that under the common law "Litton as a social host is not liable for [Chastain's death] caused by the intoxicated George Beck to whom Litton furnished alcoholic beverages. The proximate cause of the [death] was the voluntary consumption of alcohol by an able-bodied adult, and not the furnishing of the alcohol by the Defendant." 527 F.Supp. at 531.

The court also ruled that Litton did not violate any North Carolina alcoholic beverage control statutes and, consequently, it was not guilty of negligence per se. 527 F.Supp. at 532. Finally, it held that Litton was not liable under the doctrine of respondeat superior because at the time of the collision Beck had left the company's premises and was not acting within the

1. *Chastain v. Litton Systems, Inc.,* 527 F.Supp. 527 (W.D.N.C.1981). The action was filed in a state court and removed by Litton on the ground of diversity jurisdiction.

2. Litton disputes much of this summary, and, indeed, the record discloses many genuine issues of fact that must be resolved by a jury. For the purpose of reviewing the grant of summary judgment, however, we, like the district court, must view the evidence in the light most favorable to Chastain. *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir. 1979).

scope of his employment. 527 F.Supp. at 532.[3]

## II

■ This case presents questions of first impression in North Carolina, whose law governs this action. Although we can turn to no state statute or decision dispositive of the issues, we are not left without guiding principles of North Carolina law. Because North Carolina does not impose statutory liability on social hosts for the torts of their intoxicated guests, we accept the district court's conclusion that the common law is applicable. We also agree with the court that under common law a social host is not liable. But, contrary to the district court, we believe that these principles do not end the inquiry and justify summary judgment, for the parties differ over whether Litton was a social host.

■ Even where basic facts are not in dispute, summary judgment is inappropriate if the parties disagree about the inferences that properly may be drawn from the facts. *American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir.1965). Certainly it would be reasonable to infer from all the facts, including Litton's requirement that employees check into the plant while the party was in progress in order to earn a day's pay, that the affair was intended to promote Litton's business interests. Thus, whether Litton was simply entertaining its employees at a purely social gathering, or whether it was furthering a business purpose by improving working relationships, presented a jury question. *See Harris v. Trojan Fireworks Co.*, 120 Cal.App.3d 157, 174 Cal.Rptr. 452, 456–57 (1981). The case on which Litton primarily relies, *Miller v. Owens-Illinois*

Glass Co., 48 Ill.App.2d 412, 199 N.E.2d 300 (1964), does not require a different result, for there an employee's association, not the employer, was responsible for the party.

If the evidence establishes that Litton was acting as a social host, the common law of North Carolina bars recovery by Chastain's administrator. If, however, Litton was advancing its business interests and thus not acting as a social host, the question of liability requires further inquiry.

Courts differ about the liability of an employer whose employee, having become intoxicated at the employer's party, injures a third person. *Compare Halvorson v. Birchfield Boiler, Inc.*, 76 Wash.2d 759, 458 P.2d 897 (1969) (employer absolved from liability) *with Harris v. Trojan Fireworks Co.*, 120 Cal.App.3d 157, 174 Cal.Rptr. 452 (1981) (employer not absolved). To reach a decision about which course the Supreme Court of North Carolina would likely take, we must ascertain the state's policy toward persons who for business purposes dispense alcoholic beverages. This policy may be found in the state's statutes governing the conduct of businesses licensed to sell mixed alcoholic beverages and in judicial precedents pertaining to the North Carolina law of torts.

## III

In 1977, before Chastain was killed, North Carolina modified the common law by providing that it is unlawful for a person licensed to sell mixed alcoholic beverages knowingly to sell such beverages to an intoxicated person.[4] Other courts have held that violation of such a law subjects the licensee to liability for torts of the intoxicated customer, notwithstanding the common law rule exculpating providers of alco-

---

3. Litton asserts that Chastain's complaint does not allege liability under the doctrine of respondeat superior. In agreement with the district court, we conclude that a cause of action under this theory is alleged. If on remand the parties continue to differ about the scope of the complaint, the court may consider putting this issue to rest by allowing the administrator to amend by adding more explicit allegations concerning this alternative theory of recovery.

4. *See* 1977 N.C. Sess. Laws, 2nd Sess. 36, 39, ch. 1138, § 12, amending N.C.Gen.Stat. § 18A–30.

In 1981, chapter 18A was repealed, and in its place chapter 18B was substituted. A similar provision was enacted, § 18B–305(a), which provides:

It shall be unlawful for a permittee or his employee or for an ABC store employee to knowingly sell or give alcoholic beverages to any person who is intoxicated.

hol.[5] The rationale of these decisions is that these laws are safety regulations which impose a duty on the licensee, not only to the customer, but also to the public. Consequently, violation of such a law can give rise to an action for negligence against the licensee by a member of the public who has been injured by the intoxicated customer.

North Carolina follows the same rationale when an ordinance imposes a public duty. In *Bell v. Page,* 271 N.C. 396, 399–400, 156 S.E.2d 711, 715 (1967), the court said:

> The violation of a municipal ordinance imposing a public duty and designed for the protection of life and limb is negligence *per se.* However, to impose liability therefor it must be established that such violation proximately caused the alleged injury. The general definition of proximate cause, including the element of foreseeability, is applicable in determining whether the violation of such ordinance constitutes actionable negligence. . . .
>
> "What is the proximate or a proximate cause of an injury is ordinarily a question for the jury. It is to be determined as a fact from the attendant circumstances. Conflicting inferences of causation arising from the evidence carry the case to the jury." (citations omitted)

We therefore conclude that the North Carolina Supreme Court would reach the same decision as the courts that have imposed civil liability on a licensee who violates a law prohibiting the sale of alcoholic beverages to a person known to be intoxicated.

We agree with the district court that because Litton was not a licensee, it cannot be held liable under the laws governing the sale of alcoholic beverages. These laws and judicial precedents pertaining to them, however, disclose state policy toward persons who dispense alcoholic beverages in capacities other than as social hosts.

If the jury were to find that Litton was not a social host, we believe that its liability should be governed by the law of torts as developed by the North Carolina Supreme Court. North Carolina subscribes to §§ 302 and 303 of the Restatement of Torts (1934).[6] *Toone v. Adams,* 262 N.C. 403, 409, 137 S.E.2d 132, 136 (1964). North Carolina has defined proximate cause as follows:

> In this jurisdiction, to warrant a finding that negligence, not amounting to a wilful or wanton wrong, was a proximate cause of an injury, it must appear that the tort-feasor should have reasonably foreseen that injurious consequences were likely to follow from his negligent conduct. . . . It is not necessary that a defendant anticipate the particular consequences which ultimately result from his negligence. It is required only "that a person of ordinary prudence could have reasonably foreseen that such a result, *or some similar injurious result,* was probable under the facts as they existed." (emphasis in original)

*Sutton v. Duke,* 277 N.C. 94, 107, 176 S.E.2d 161, 168–69 (1970).

North Carolina also holds that the negligence of one tortfeasor cannot be insulated

---

**5.** *See, e.g., Marusa v. District of Columbia,* 484 F.2d 828 (D.C.Cir.1973); *Waynick v. Chicago's Last Dep't Store,* 269 F.2d 322 (7th Cir.1959); *Ono v. Applegate,* 62 Hawaii 131, 612 P.2d 533 (1980); *Jardine v. Upper Darby Lodge No. 1973, Inc.,* 413 Pa. 626, 198 A.2d 550 (1964). *See also:* Restatement (Second) of Torts § 285 comment c and § 286 (1965). *Contra Lewis v. Wolf,* 122 Ariz. 567, 596 P.2d 705 (Ct.App. 1979); *Felder v. Butler,* 292 Md. 174, 438 A.2d 494 (1981); *Hall v. Budagher,* 76 N.M. 591, 417 P.2d 71 (1966).

**6.** § 302. *Acts Involving Risk of Either Direct or Indirect Harm.*

    A negligent act may be one which:

(a) starts a force, the continuous operation of which involves an unreasonable risk to another, or

(b) creates a situation which involves an unreasonable risk to another because of the expectable action of the other, a third person, an animal or a force of nature.

§ 303. *Acts Intended or Likely so to Affect the Conduct of the Other or a Third Person as to Involve Unreasonable Risk.*

    An act is negligent if the actor intends it to affect, or realizes or should realize that it is likely to affect, the conduct of another, a third person or an animal in such a manner as to create an unreasonable risk of harm to the other.

by the negligence of another so long as the negligence of the first plays a "substantial and proximate part in the injury. . . . [T]he test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another, is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury." *Watters v. Parrish,* 252 N.C. 787, 796–97, 115 S.E.2d 1, 7–8 (1960).

Applying these authorities to Litton's conduct, assuming it is not a social host, we conclude that Litton was negligent if it failed to exercise ordinary care in furnishing, or permitting its employees to furnish, alcoholic beverages to Beck knowing that he had become intoxicated. *Toone, supra,* 137 S.E.2d at 136; Restatement of Torts §§ 302, 303 (1934). This negligence would be a proximate cause of Beck's collision with Chastain if Litton could have reasonably foreseen that Beck, while intoxicated, would probably drive his motor vehicle on a public street and cause a collision. *Sutton, supra,* 176 S.E.2d at 168–69. Under these circumstances, Litton would not be insulated by Beck's negligence. *Watters, supra,* 115 S.E.2d at 7–8. These issues present factual questions that should be submitted to a jury.

### IV

We also conclude that summary judgment was inappropriate on the cause of action based on Litton's vicarious liability for Beck's negligence. We cannot accept Litton's argument that it is absolved from liability because Beck was not acting within the scope of his employment at the time of his collision with Chastain. This contention confuses negligence with proximate cause. It overlooks Beck's relationship with Litton when he became intoxicated, which we believe is the critical time for determining whether the doctrine of respondeat superior should be applied. Again, the initial issue is whether the party was purely a social occasion, or whether it was sufficiently related to Litton's business to bring Beck's attendance within the scope of his employment.

The North Carolina Supreme Court has succinctly stated the principles of the doctrine of respondeat superior. In *Johnson v. Lamb,* 273 N.C. 701, 707, 161 S.E.2d 131, 137 (1968), the Court said:

> If an employee is negligent while acting in the course of employment and such negligence is the proximate cause of injury to another, the employer is liable in damages under the doctrine of. *respondeat superior,* notwithstanding the fact that the employer, himself, exercised due care in the supervision and direction of the employee, the employee's violation of instructions being no defense to the employer.

Applying these principles, we believe that the evidence, viewed in the light most favorable to Chastain's administrator, raises issues which should be submitted to a jury. They include: whether Beck's attendance at Litton's party and his consumption of alcoholic beverages could reasonably be considered to be within the scope of his employment; if so, whether his excessive drinking at the party constituted negligence on his part; and, if so, whether his negligent intoxication continued until the time he collided with Chastain and constituted a proximate cause of the collision.

This is essentially the analysis of a similar situation found in *Harris v. Trojan Fireworks,* 120 Cal.App.3d 157, 165, 174 Cal. Rptr. 452, 457 (1981), where the court in summary said:

> We hold that plaintiffs have pleaded sufficient facts, which, if proved, would support a jury's determination that [the employee's] intoxication occurred at the [employer's] Christmas party and that his attendance at the party as well as his state of intoxication occurred within the scope of his employment. That he would attempt to drive home while still intoxicated and might have an accident was foreseeable.

### V

We are aware, of course, that Litton disputes much of the evidence on which Chastain's administrator bases his case. This opinion therefore does not reflect any views about the ultimate merits of the controversy. Determination of the facts and the inferences that reasonably can be drawn

from them with respect to the issues of Litton's status, negligence, intervening negligence, proximate cause, and vicarious liability should be made by a jury. Summary judgment therefore was inappropriate. *See Pierce v. Ford Motor Co.,* 190 F.2d 910, 913, 915–16 (4th Cir.1951). The judgment of the district court is vacated and the case remanded for further proceedings consistent with this opinion. The administrator shall recover his costs.

## ORDER

Upon consideration of the petition for rehearing filed by Litton Systems, Inc.;

With the concurrence of Judge Murnaghan and Judge Cacheris, IT IS ADJUDGED AND ORDERED that the petition for rehearing is denied.

Denial, however, is without prejudice to the right of Litton Systems, Inc., to file a motion under Fed.R.Civ.P. 60(b) should pending litigation in North Carolina ultimately establish that state law precludes recovery in this case. *See Standard Oil Co. v. United States,* 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976). At its discretion, the district court may stay further proceedings pending resolution of the pertinent legal issues in the North Carolina courts.

Denial is also without prejudice to Litton's claim, first presented in the petition for rehearing, that Chastain's recovery against Beck precludes an action against Litton on the issue of respondeat superior. While reference to the plaintiff's recovery was mentioned in another context in the district court's opinion and the briefs, the asserted preclusive effect of the action against Beck was neither considered by the district court nor argued on appeal.