JAMES B. WILLIS, JR. v. THOMAS H. RUSSELL AND SHELBY M. FREEMAN

No. 833SC239

(Filed 15 May 1984)

1. **Architects § 2— action for fees—sufficiency of evidence**

The evidence was sufficient for the jury to find that defendants engaged plaintiff architect upon express terms to either design and supervise an entire condominium project or just to do the schematic design phase of the project where it tended to show that plaintiff offered to perform certain architectural design services for defendants in exchange for certain compensation; the discussions between the parties dealt with both the entire condominium project and the schematic design; and defendants told plaintiff to begin the work, approved his work as it proceeded, and approved the fee and profit schedules which plaintiff sent them.

2. **Damages § 3.5— loss of profits by breach of contract**

Prospective profits prevented or interrupted by breach of contract are generally recoverable when it appears that it was reasonably certain that such profits would have been realized except for the breach of contract, that such profits can be ascertained and measured with reasonable certainty, and that such profits may reasonably be supposed to have been within the contemplation of the parties when the contract was made.

3. **Architects § 2— architectural services—quantum meruit recovery**

The measure of damages for architectural services under an implied contract or *quantum meruit* theory is the reasonable value of the services rendered, less any benefits received.

4. **Appeal and Error § 6— directed verdict for plaintiff upon motion by defendants—earlier refusals to direct verdict—no right of appeal by defendants**

Where the trial court entered a directed verdict in favor of plaintiff upon motion by defendants, defendants' appeal from the trial court's earlier refusals to either direct a verdict in their favor or to direct a verdict for plaintiff in a lesser amount has the effect of opposing the directed verdict entered upon their motion and must be dismissed.

5. **Contracts § 26— unexecuted contract—competency for corroboration**

An unexecuted written contract for architectural services which, according to plaintiff architect, had been orally agreed to by the parties was admissible only for the purpose of corroboration.

Judge WELLS concurring in result.

APPEAL by plaintiff and cross-appeal by defendants from *Reid, Judge.* Judgment entered 3 December 1982 in Superior Court, CARTERET County. Heard in the Court of Appeals 8 February 1984.

Plaintiff's action seeks damages of $73,939 for breach of contract and his evidence tended to show the following: Defendants employed plaintiff, an architect, to help them develop a large condominium project that would meet the approval of the town boards. Plaintiff offered to help them obtain the needed variances if defendants would retain him as the architect for the project, and the defendants agreed thereto. Plaintiff obtained the variances in January of 1981, and shortly thereafter presented defendants with a cost estimate for the 160 unit project, including a fee breakdown for each stage of his work. The estimated cost for the entire project was $10,000,000, and plaintiff's fee was 2.25%, or $225,000. The first phase of plaintiff's work involved schematic design, which accounted for 15% of his total projected work on the project, or $33,750 in fees. Defendants indicated that the fees stated were acceptable.

Before proceeding, defendants decided to seek corroboration of the cost estimates and compare plaintiff's plans to existing condominiums. During February of 1981 plaintiff sent them "red letter" figures specifying what part of the fees would be "hard cost" needed up front and what part could be deferred until a construction loan was obtained. This fee schedule also showed that 25% of the fees would be plaintiff's profit. Plaintiff informed defendants that $10,000 to $15,000 in "hard money" would be needed to make plans and obtain preliminary permits from the town where the project would be located, and later submitted a "hard money" fee of $15,301 for doing the schematic design for 80 of the units. The defendants decided to pursue the project and on 2 March 1981 instructed plaintiff to go ahead with the work.

Plaintiff began the schematic design phase of the project, and showed the defendants his alternative design possibilities on 10 March 1981. Plaintiff also delivered a proposed written contract covering his services and compensation, in which fees and profits due were specifically set forth. On 19 March 1981 defendants told plaintiff they would not sign the contract because it was too complicated; but they assured him they were going ahead with the project and wanted him as the architect. They also approved his design work and promised to sign a simpler contract after plaintiff stated that the costs and fees were the same as submitted in February. Meanwhile, plaintiff continued to prepare drawings for the project.

On 23 March 1981 defendant Russell told plaintiff that the project had been delayed or halted. He then stated that defendants had found another architect who would do the work without requiring any money in advance. Defendant Russell handed plaintiff a $1,000 check, which brought the amount plaintiff received from the defendants for the work he had done in March of 1981 to a total of $2,000. Plaintiff was told to send a bill to the defendants for what they owed him and that they would pay it; at that time three-fourths of the schematic design work had been done. Plaintiff spent 31 hours on the project in March of 1981 and his assistant architect spent 131 hours.

On 2 April 1981 plaintiff submitted a bill for $73,939. It charged defendants $4,405 for the preliminary work such as obtaining the zoning variances, $18,984 for completing 75% of the schematic design work, $8,438 for his profit on the schematic design phase, and $47,812 for his profit on the other phases of the project. Defendants were credited with $5,700 already paid. Defendants did not pay the bill and construction has not begun on the condominiums.

At the close of plaintiff's evidence defendants moved for a directed verdict on the grounds that (1) plaintiff failed to prove the existence of a contract, and (2) the condominiums could not have been built due to the zoning laws. The motion was denied. Defendants then moved for a directed verdict in favor of the plaintiff in the amount of $3,970. This figure was arrived at under a *quantum meruit* theory based on plaintiff's hourly rate and the number of hours actually worked. This motion was also denied, the court stating that the value of plaintiff's services was a jury question. Counsel for defendants then asked the court what an appropriate *quantum meruit* value would be, and the court responded that 75% of $15,301 would be the maximum, apparently because the February fee schedule specified $15,301 as the amount of "hard money" needed to complete the schematic design phase of the project and 75% of that work had been done.

Defendants next moved for a directed verdict in favor of plaintiff for $7,032.50, and this motion was allowed. In doing so, the court stated, in substance, that: From the plaintiff's evidence, defendants only agreed to pay and were obligated to pay $15,301, which included $4,591 for outside consultants that were never

engaged; and that since that left a total of $10,710 due for schematic design fees and the schematic design work was 75% complete when defendants terminated plaintiff's services, plaintiff had earned $8,032.50 according to the trial court, against which defendants had already paid $2,000, thereby leaving a balance of $6,032.50. To achieve the final sum of $7,032.50, the court added an extra $1,000 for plaintiff's troubles. Defendants' counterclaim was dismissed in a separate judgment. Plaintiff appealed the grant of defendants' motion for directed verdict in the amount of $7,032.50, while defendants cross-appealed the denial of their first two motions for directed verdict.

*Mason and Phillips, by L. Patten Mason, for plaintiff appellant and cross appellee.*

*Bennett, McConkey & Thompson, by Thomas S. Bennett, for defendant appellee and cross appellant Thomas H. Russell.*

*Wheatly, Wheatly & Nobles, by C. R. Wheatly, Jr., for defendant appellee and cross appellant Shelby M. Freeman.*

PHILLIPS, Judge.

Both parties assign error to the trial court ruling on defendants' motions for directed verdict. The appropriate standard of review is set forth in *Koonce v. May*, 59 N.C. App. 633, 634, 298 S.E. 2d 69, 71 (1982):

> A motion by a defendant for a directed verdict under G.S. 1A-1, Rule 50(a) of the Rules of Civil Procedure tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff. On such a motion, plaintiff's evidence must be taken as true and considered in the light most favorable to the plaintiff, giving plaintiff the benefit of every reasonable inference to be drawn therefrom. A directed verdict for the defendant is not properly allowed unless it appears as a matter of law that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish. [Citations omitted.]

Although the directed verdict was in plaintiff's favor, it was granted upon defendants' motion, over plaintiff's objection, and deprived plaintiff of the chance of recovering a great deal more than the judgment provided for. Under the circumstances, the

evidence must be viewed in the light most favorable to plaintiff. When so viewed, it is clear that a prima facie case of breach of contract was made out, which the jury, rather than the court, should have decided. Furthermore, even if plaintiff's evidence had failed to make out a case for breach of contract by defendants and it had been proper to dispose of the case by the *quantum meruit* issue, it was error for the court to undertake to decide it instead of submitting it to the jury.

[1]    According to the evidence previously summarized: Plaintiff offered to perform certain architectural design services for defendants in exchange for certain compensation; their discussions dealt with both the entire condominium project and the schematic design, and the fees to be paid therefor were clearly stated. Defendants told plaintiff to begin the work, approved his work as it proceeded, and approved the fee and profit schedules received. A jury could properly find therefrom that defendants expressly contracted with plaintiff for either the schematic design work or for the entire project on the fee basis that plaintiff testified was discussed. Defendants' refusal to execute a written contract so providing does not necessarily establish that plaintiff's services were not accepted, as defendants contend; the intent of the parties controls such matters, and acceptance may be manifested orally or by conduct, as well as by a signature. *Executive Leasing Associates, Inc. v. Rowland*, 30 N.C. App. 590, 592, 227 S.E. 2d 642, 644 (1976). In our view this evidence was sufficient to support the claim that the defendants engaged plaintiff upon express terms to either design and supervise the entire condominium project or just do the schematic design phase.

[2, 3]    Upon retrial, therefore, it will be for the jury to determine whether the parties contracted at all, and, if so, whether for the entire project or just the schematic design. If the jury finds that there was a contract for the entire project based on the fee schedule referred to and defendants breached it, the measure of damages would include plaintiff's prospective profits, as well as the fees for work performed. The general rule in this state is that prospective profits prevented or interrupted by breach of contract are recoverable when it appears:

> (1) that is is reasonably certain that such profits would have been realized except for the breach of the contract, (2) that

such profits can be ascertained and measured with reasonable certainty, and (3) that such profits may be reasonably supposed to have been within the contemplation of the parties, when the contract was made, as the probable result of a breach.

*Perkins v. Langdon*, 237 N.C. 159, 171, 74 S.E. 2d 634, 644 (1953). But, of course, if the jury finds that the parties had no express contract, it would then be appropriate for them to consider issues of implied contract and *quantum meruit.* In which event, of course, the measure of damages will be the reasonable value of the services rendered, less any benefits received, *Doub v. Hauser*, 256 N.C. 331, 123 S.E. 2d 821 (1962), rather than the formula the trial court used. But, since damages, at least beyond a nominal amount, are never presumed, for plaintiff to recover any substantial sum under a *quantum meruit* theory, evidence will be required as to the reasonable value or market value of his services and those of any of his assistants or employees that contributed to the work that was done for the defendants. *Harrell v. W. B. Lloyd Construction Co.*, 41 N.C. App. 593, 255 S.E. 2d 280 (1979). The value of plaintiff's services will not have to be determined, however, if the jury first decides that the parties had an express contract and defendants breached it; for, with minor exceptions irrelevant to this appeal, our law permits people to contract as they see fit and enforces agreements so made according to their terms.

[4]  Since the judgment in plaintiff's favor was entered pursuant to defendants' insistence and instigation, they cannot be heard in opposition thereto, and their appeal from the judge's earlier refusals to either direct a verdict in their favor or to direct a verdict for plaintiff, but in a lesser amount than finally ordered, has that effect. It is inherent in our law and practice that litigants may not blow hot and cold at the same time, and defendants' appeal is dismissed.

[5]  Nevertheless, we discuss briefly, since the question may arise again upon retrial, defendants' contention that the written contract, which the parties never executed, was erroneously received into evidence during the trial. That the paper was not signed is immaterial, since the contract sued on was oral, not written, and a contract for architectural services does not have to

be in writing. Since the paper contained matters that, according to plaintiff, had been discussed by the parties and orally agreed to, it was admissible, *but only for the purposes of corroboration.* In receiving the exhibit into evidence over defendants' objection, however, the court commented, "And it should be received for whatever weight the jury wants to attach to it." Though the case was later taken from the jury and we do not know how they would have been instructed in regard to it, the remark indicates that the judge received the exhibit as substantive evidence, which it was not. Thus, upon retrial, if the paper is again offered into evidence, its admission should be limited accordingly.

As to plaintiff's appeal, reversed and remanded for a new trial.

As to defendants' cross-appeal, dismissed.

Judge BRASWELL concurs.

Judge WELLS concurs in result.

Judge WELLS concurring in result.

I agree that defendants' appeal should be dismissed. I also agree that plaintiff should have a new trial. On retrial, the jury should be instructed that defendant, by its motion for directed verdict for plaintiff, has judicially admitted owing plaintiff at least $7,032.50.