**PEAL v. SMITH**

[115 N.C. App. 225 (1994)]

REGINA ANNETTE PEAL, Incompetent, By her General Guardian, JAMES WALTER PEAL, JR., Plaintiff-Appellee v. HOWARD THOMAS SMITH, Defendant, and CIANBRO CORPORATION and WILLIAMS BROTHERS CONSTRUCTION COMPANY, INC., A Joint Venture d/b/a CIANBRO-WILLIAMS BROS., Defendants-Appellants

No. 922SC272

(Filed 21 June 1994)

## 1. Labor and Employment § 236 (NCI4th)— automobile accident—drinking after work on premises—violation of company policy—liability of employer

The trial court did not err by denying defendants' motions for a directed verdict, judgment notwithstanding the verdict, and a new trial where plaintiff was injured as a passenger in a vehicle involved in a collision on the Albemarle Sound Bridge; the other vehicle was driven by defendant Smith, who was an employee of defendant Cianbro; defendant Cianbro's handbook included the statement that no person under the influence of alcohol would be allowed on the work site; Cianbro employees had gathered in the parking lot after work on the day of the collision to drink beer; supervisory personnel were aware of the activity and project managers came to the parking lot after work; the beer was paid for by "passing the hat"; defendant Smith had some alcohol and witnesses at the accident scene testified that he appeared obviously alcohol impaired; and the jury returned verdicts against both the individual and corporate defendants. Although defendants argue that this is a social host case and that they did not provide or furnish the alcohol, plaintiff instituted a claim based in common law negligence. While the corporate defendants' establishment and memorialization of an alcohol policy standing alone did not subject them to liability, the common law duty of a master to control his servant under circumstances as outlined in the Restatement, Second, of Torts § 317, taken together with the defendants' own written policies, established a standard of conduct that if breached could result in actionable negligence. The active violation of the policy in allowing and participating in the alcohol consumption on company premises provided evidence of the breach and the evidence presented at trial was sufficient for the jury to conclude that the plaintiff's injuries were foreseeable.

**Am Jur 2d, Master and Servant § 459.**

2. **Negligence § 168 (NCI4th)— automobile accident—drinking on employer's premises—violation of company policy— liability of employer**

> The trial court correctly instructed the jury on the appropriate principles of common law negligence in an action arising from an automobile collision where the corporate defendants' had allowed workers to drink beer on the job site after work in violation of a provision in an employee policy manual and one of the workers had subsequently collided with plaintiff's car.

**Am Jur 2d, Negligence §§ 149, 150.**

Appeal by defendants from judgment entered 9 August 1991 by Judge Richard B. Allsbrook in Washington County Superior Court. Heard in the Court of Appeals 9 February 1993.

The corporate defendants appeal from denials of motions for directed verdict, judgment notwithstanding the verdict, and a new trial. The action arises out of an automobile accident that occurred on 17 October 1986. On that date, the plaintiff, Regina Annette Peal, was a passenger in a vehicle crossing the Albemarle Sound Bridge. Her father, sister, and niece were also travelling in the automobile. At approximately 6:40 p.m., an automobile driven by the defendant Howard T. Smith collided with the Peal vehicle. Plaintiff's father died as a result of the collision. The plaintiff is permanently neurologically damaged and will require institutional care for the remainder of her life. She was twenty-one years old at the time of the accident. She now has the mental capacity of a six-year-old. Her condition will worsen as she ages.

The corporate defendant, Cianbro, was engaged in the construction of the new Albemarle Sound bridge. The individual defendant, Howard Smith, was employed by the corporate defendant. At the time of the accident, the Cianbro Employee Information Handbook contained the following policy: "No person under the influence of alcohol, marijuana, or non-prescription drugs shall be allowed on the project work site."

After work on the day of the collision (about 4:30 p.m.), ten or twelve employees met in the parking lot to drink beer before going home. Supervisory personnel were aware of the after work activity. Other project managers also came to the parking lot after work. The beer was paid for by "passing the hat." Testimony indicated that

PEAL v. SMITH

[115 N.C. App. 225 (1994)]

defendant Smith had some alcohol (although evidence did not reveal that he was impaired in the parking lot) and left the gathering. As he was proceeding across the bridge about two miles from the company site, the automobile that he was driving crossed the center line and ran head on into the vehicle driven by the plaintiff's sister. Testimony by eyewitnesses at the accident scene indicated that Smith appeared obviously alcohol-impaired. He was not seriously injured in the accident.

The plaintiff filed suit against Smith on 24 April 1987, alleging that:

(a) He operated his vehicle while under the influence of alcohol or other impairing substance, in violation of G.S. 20-138.1(a)(1);

(b) He operated his vehicle after having consumed sufficient alcohol that at the time of the accident in suit he had an alcohol concentration greater that 0.10, in violation of G.S. 20-138.1(a)(2);

(c) He drove his vehicle carelessly and heedlessly in willful or wanton disregard of the rights and safety of others, in violation of G.S. 20-140(a).

(d) He drove his vehicle without due caution and circumspection and at a speed and in a manner so as to endanger Regina or her family, in violation of G.S. 20-140(b);

(e) He drove at a speed greater that was reasonable and prudent, in violation of G.S. 20-141(a);

(f) He drove at a speed in excess of the lawful limit of 55 m.p.h. in violation of G.S. 20-141(b);

(g) He failed to reduce speed to avoid an accident, in violation of G.S. 20-141(m);

(h) He drove his vehicle on the wrong side of the road in violation of G.S. 20-146 and G.S. 20-148;

(i) He failed to have his vehicle equipped with proper brakes, in violation of G.S. 20-124, or if so equipped, he failed to apply the same seasonably; and

(j) He failed to keep a proper look out, to keep his vehicle under proper control or to pay proper attention to his driving.

On 23 November 1987, the plaintiff amended her complaint, joining Smith's employer Cianbro/Williams, and alleged, *inter alia*, that the corporation "failed to enforce or carry out their own regulations, which, on information and belief, would have prevented the defendant Smith from becoming intoxicated on their business premises and then departing to operate an automobile on the highway in that condition . . . ."

A jury trial commenced on 22 July 1991 in Washington County Superior Court. Defendants Cianbro/Williams moved for directed verdict at the close of plaintiff's evidence and at the close of all the evidence. Those motions were denied. The jury returned with verdicts against both the individual and corporate defendants, and awarded the plaintiff damages of $2,250,000.00. Cianbro/Williams filed motions for judgment notwithstanding the verdict and new trial. Both motions were denied on 29 August 1991. The corporate defendants appeal from these denials, as well as the denials of the directed verdict during trial. The individual defendant Smith did not appeal.

*Hornthal, Riley, Ellis & Maland, by L. P. Hornthal, Jr. and M. H. Hood Ellis, for plaintiff-appellee.*

*Maupin Taylor Ellis & Adams, P.A., by James A. Roberts, III, M. Keith Kapp and Richard N. Cook, for defendant-appellants.*

ORR, Judge.

The defendants first argue that the trial court committed reversible error in denying their motions for directed verdict, judgment notwithstanding the verdict, and new trial. The basis for this argument and the authority cited therein in the defendants' brief rests exclusively on the Court of Appeals opinion in *Hart v. Ivey*, 102 N.C. App. 583, 403 S.E.2d 914 (1991), *modified and affirmed*, 332 N.C. 299, 420 S.E.2d 174 (1992), and the cases cited therein as well as *Chastain v. Litton Systems*, 694 F. 2d 957 (4th Cir.), *cert. denied*, 462 U.S. 1106, 77 L. Ed. 2d 1334 (1983). All of the applicable law cited or argument presented rests upon the theory that this is a social host case. We conclude that this is not a social host liability case but one proceeding under basic standards of common law negligence, and accordingly we affirm the trial court's denial of defendants' motions for directed verdict, judgment notwithstanding the verdict and new trial.

I.

**[1]** Pursuant to N.C. Gen. Stat. § 1A-1, Rule 50, a party is entitled to a directed verdict where the evidence, when viewed in the light most favorable to the plaintiff, is insufficient as a matter of law to support a verdict in his favor. A directed verdict is not properly allowed unless it appears that a recovery cannot be had by plaintiff upon any view of the facts which the evidence tends to establish. *Willis v. Russell*, 68 N.C. App. 424, 315 S.E.2d 91, *disc. review denied*, 311 N.C. 770, 321 S.E.2d 159 (1984). In a negligence case, a defendant is not entitled to a directed verdict unless the plaintiff has failed to establish the elements of negligence as a matter of law. *Felts v. Liberty Emergency Services*, 97 N.C. App. 381, 388 S.E.2d 619 (1990). "Directed verdicts in a negligence action should be granted with caution because, ordinarily, it is for the jury to determine whether the applicable standard of care has been breached." *Goodman v. Wenco Foods, Inc.*, 333 N.C. 1, 17, 423 S.E.2d 444, 452 (1992). A motion for judgment notwithstanding the verdict is essentially the renewal of a prior motion for a directed verdict; therefore, the rules regarding the sufficiency of the evidence to carry the case to the jury is equally applicable. *Henderson v. Traditional Log Homes, Inc.*, 70 N.C. App. 303, 319 S.E.2d 290, *disc. review denied*, 312 N.C. 622, 323 S.E.2d 923 (1984).

The plaintiff in the instant case instituted a claim based in common law negligence against Defendant Smith and against his employer, Cianbro. In order to survive the defendants' motions,

> plaintiff was required to present some evidence that [the defendant] failed to exercise proper care in the performance of some legal duty owed [her] and that the breach of this duty was the proximate cause of [her] injury. . . . The cause producing the injurious result must be in a continuous sequence, without which the injury would not have occurred, and one from which any person of ordinary prudence would have foreseen the likelihood of the result under the circumstances as they existed. . . .

*Goodman*, 333 N.C. at 18, 423 S.E.2d at 452 (citations omitted).

As previously noted, the defendants argue that this is a social host case, and since there was no evidence that Cianbro provided or furnished the alcohol to the individual defendant they are therefore entitled to have their motions granted. See *Hart v. Ivey*, 332 N.C. 299, 420 S.E.2d 174 (1992); *Calamier v. Jeffries*, 113 N.C. App. 303, 438

S.E.2d 427 (1994); *see also Chastain v. Litton Systems, Inc.*, 694 F.2d 957 (4th Cir. 1982), *cert. denied*, 462 U.S. 1106, 77 L. Ed. 2d 1334 (1983). In the case at bar, we agree that there is no evidence of the employer furnishing the alcohol to its employees, and that the employee gathering took place after hours. Consequently, while it is true that this case is distinguishable from *Hart, Calamier* and other alcohol consumption cases cited in the defendants' brief, as defendant provided no alcohol at the gathering, that fact does not insulate them from a determination that they were negligent under traditional negligence principles. As our Supreme Court responded to a similar argument in *Hart*, "[The defendants] argue that there are many implications from establishing such a claim and we should not do so. Our answer to this is that we are not recognizing a new claim. We are applying established negligence principles and under those principles the plaintiffs have stated claims." *Hart* at 305-06, 420 S.E.2d at 178.

### A. The Duty and its Breach

It is a matter of hornbook law that "[a] duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." W. Page Keeton et al., *The Law of Torts*, § 53 (5th ed. 1984). The existence of a duty is "entirely a question of law . . . and it must be determined only by the court." *Id.* at § 37.

Therefore, we must determine as a matter of law, whether under the facts of this case, defendants had a duty to the plaintiff to "conform to a particular standard of care." The plaintiff advances two theories upon which a duty can be found – 1) the adoption of a specific safety rule applicable to the facts of this case and 2) the duty of a master to control the conduct of his servant while on the master's premises. This State recognizes that " '[t]he law imposes upon every person *who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm*, and calls a violation of that duty negligence.' " *Hart* at 305, 420 S.E.2d at 178 (citation omitted) (emphasis added).

We first address the adoption of the safety rule adopted by the defendants. The Cianbro employee handbook contained a drug and alcohol policy which provided that "No person under the influence of alcohol, marijuana, or non-prescription drugs shall be allowed on the project work site." Defendants argue that the safety rule standing alone does not create a duty to the plaintiff. However, it is well estab-

lished in North Carolina that the breach of a voluntarily adopted safety rule is some evidence of defendant's negligence. In *Robinson v. Seaboard System R.R. Inc.*, 87 N.C. App. 512, 361 S.E.2d 909 (1987), this Court found that evidence presented that the employee knew of the employer's safety rule and did not enforce it, causing injury to the plaintiff, permitted a reasonable inference that the actions of the employees in ignoring safety rules "manifested 'a reckless indifference to injurious consequences probable to result' from their breach of a duty recognized by law and *by Southern's own rules as necessary to the safety of others." Id.* at 522, 361 S.E.2d at 915 (emphasis added).

Likewise, in *Klassette v. Mecklenburg County Area Mental Health Center*, 88 N.C. App. 495, 500, 364 S.E.2d 179, 183 (1988), the "defendant's own written policies and procedures" were found to be evidence of a standard of care. The *Klassette* Court held, "We recognize voluntary written policies and procedures do not themselves establish a *per se* standard of due care appropriate to these circumstances; however, they represent some evidence of a reasonably prudent standard of care." *Id.* at 501, 364 S.E.2d at 183. However, the Court noted that "such evidence [of written policies and procedures] would be extremely helpful in determining what duty of care [the defendant] voluntarily assumed which in turn is relevant to the standard of reasonable care at issue." *Id.* at 505, 364 S.E.2d at 185.

Additionally, in a challenge from a patient who received negligent treatment by a physician at Moses Cone Hospital, *Blanton v. Moses H. Cone Memorial Hospital*, 319 N.C. 372, 354 S.E.2d 455 (1987), the North Carolina Supreme Court found the defendant hospital's failure to follow the standards of the Joint Commission on the Accreditation of Hospitals to be evidence of negligence on the part of the corporate defendant. The *Blanton* Court referenced *Wilson v. Lowe's Asheboro Hardware, Inc.*, 259 N.C. 660, 131 S.E.2d 501 (1963), in which the evidence showed that a ladder that injured plaintiff was not constructed in accordance with the American Standard Safety Code for Portable Wooden Ladders. The Court stated:

> If it is *some evidence* of negligence for the manufacturer of ladders to violate an industry safety standard which safety standard the manufacturer had purported to follow we believe it is some evidence of negligence for a hospital to violate a safety standard which the hospital had purported to follow. The duty of a hospi-

tal to its patients should be at least as great as a ladder manufacturer to users of its ladders.

*Blanton* at 376, 354 S.E.2d at 458. In accord, we conclude that on the facts of this case the safety rule adopted in the employee handbook by the corporate defendants was some evidence of a standard of care.

Having determined that a safety regulation or policy may provide some evidence of a standard of care and its breach, we also find that the Restatement, Second, of Torts is helpful in answering the question of what duty, if any, was owed to plaintiff. Section 317 states that:

A master is under a duty to exercise reasonable care so as to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control.

The defendant in the case *sub judice* argues that the North Carolina Supreme Court has specifically rejected this section of the Restatement in *Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897 (1991), and that this rejection was reaffirmed by this Court in *King v. Durham County*, 113 N.C. App. 341, 439 S.E.2d 771 (1994). However, both *Braswell* and *King* are factually distinguishable from the instant case. In *Braswell*, plaintiff's decedent sued the sheriff of Pitt County, alleging that he and his department had failed to protect the decedent from her murder by her estranged husband, a deputy sheriff, after a domestic dispute. The Supreme Court found that the "public duty doctrine" insulated the sheriff from liability to the plaintiff under those facts. The Court further stated, quoting the Restatement, Sec-

**PEAL v. SMITH**

[115 N.C. App. 225 (1994)]

ond, of Torts § 317, "[w]e find no case in which liability [for negligent supervision] has been imputed to an employer *solely on the basis of an employee 'using a chattel of the master.'* " *Id.* at 375, 410 S.E.2d at 904 (emphasis added).

Clearly, the use of the master's chattel is inapplicable under the facts of this case, nor is the cause of action grounded in negligent supervision. In our situation, we have an employer who could control the employee so as to prevent harm to third persons; the employee was on premises in possession of the employer; the employer knew or had reason to know that he could control the employee, and knew or should have known that there was the necessity and the opportunity to exercise that control over the employee. Thus, the elements of a common law duty in a master/servant relationship as described by the above section of the Restatement have been met.

In the case *sub judice*, evidence was presented which tended to show that Cianbro's supervisory personnel were aware of the policy and its purposes. They were also aware of its regular violation. Even without a written personnel policy governing alcohol consumption, the corporation's knowing acquiescence in allowing the afterhours beer party in the parking lot might provide some evidence of a duty and a breach of that duty.

Frank Susi and Kevin Philbrook, both supervisors, testified that they were aware that the employees commonly met immediately after work for beer in the company's leased parking area. Further, Susi and Philbrook (who joined the gathering the afternoon of the accident) both testified that the policy was intended not only to protect the employees on site, *but also to prevent accidents involving Cianbro employees and the public.*

We agree that the corporate defendants' establishment and memorialization of a alcohol policy standing alone did not subject them to liability. However, the common law duty of a master to control his servant under certain circumstances as outlined in Restatement § 317, taken together with the defendants' own written policies established a standard of conduct that if breached could result in actionable negligence. In the instant case, we find that the active violation of the policy in allowing and participating in the alcohol consumption on company premises provided evidence of the breach of the standard of care imposed on the corporate defendant. As we have stated, the affirmative course of conduct here was not merely the establishment of the policy. The conduct by the corporation, in vio-

lating its own policy, provided evidence that the corporation failed to exercise ordinary care to protect the plaintiff and her family from the very results that the policy intended to prevent. We therefore conclude that there was a duty and evidence of a breach of that duty.

### B. Causation and Damages

Once we have determined that evidence of a duty and a breach of a duty was presented at trial, our next inquiry is whether there was evidence from which the jury could conclude that the defendants' actions were the proximate cause—"a cause which in natural and continuous sequence produces a plaintiff's injuries and one from which a person of ordinary prudence could have reasonably foreseen that such a result or some similar injurious result was probable." *Murphey v. Georgia Pacific Corp.*, 331 N.C. 702, 706, 417 S.E.2d 460, 463 (1992).

As this Court noted in *Hart v. Ivey*, 102 N.C. App. 583, 403 S.E.2d 914 (1991), with respect to proximate cause analysis,

[a]n actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such act was reasonably fore-seeable at the time of his negligent conduct. . . .

. . . Moreover, "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act . . . does not prevent the actor from being liable for harm caused thereby." . . .

*Id.* at 592, 403 S.E.2d at 920. Furthermore, questions of foreseeability are typically left for the jury. "In any case where there might be reasonable difference of opinion as to the foreseeability of a particular risk, the reasonableness of the defendant's conduct with respect to it, or the normal character of an intervening cause, the question is for the jury." *Prosser, supra,* § 45. Our review of the record indicates that the evidence presented at trial was sufficient for the jury to conclude that the plaintiff and her resulting injuries were foreseeable. Therefore, we disagree with defendants' contentions that the trial court erred in denying their motions for directed verdict, JNOV, and new trial.

### II.

[2] The second basis for defendants' appeal is that the trial court's instructions were in error. This argument is based essentially on

defendants' initial argument that there was no duty. Having already determined that as a matter of law, the defendant had a duty to the plaintiff, we find no error in the trial court's instruction. At the close of all the evidence, the jury was instructed that:

> As to plaintiff's first contention, there is evidence tending to show that Cianbro/Williams voluntarily adopted a safety policy, rule or regulation concerning the use of alcohol by employees. I instruct you that the voluntary adopting of a safety policy, rule or regulation as a guide to be followed for the protection of the employees and the public is at least some evidence that a reasonably prudent person would follow the requirement of such policy, rule, or regulation.
>
> This means that a violation of a voluntarily adopted safety policy, rule, or regulation may be considered by you together with all of the other facts and circumstances existing on the occasion in determining whether or not Defendants Cianbro/Williams were negligent. . . .

The trial court then instructed the jury on the evidence required for them to find liability, including 1) that Cianbro had a safety policy regarding alcohol consumption on company property on the day of the collision, 2) that the policy was adopted to protect employees and the public, 3) that the policy applied to the parking area where employees drank after work, 4) that the defendant Smith consumed alcohol in the parking lot on the day of the accident, 5) that Cianbro should have known through the exercise of due care that Smith was drinking beer with other employees that day, 6) that the consumption of alcohol was a substantial factor in the negligent driving of the defendant, 7) and that Cianbro knew or should have known that their failure to enforce the alcohol policy would probably result in injury to some member of the public. The court then continued:

> As to Plaintiff's second contention regarding Defendant Cianbro's alleged negligence, I instruct you that an employer is under a duty to exercise reasonable care to control its employee while acting outside of the scope of his employment so as to prevent him from so conducting himself as to create an unreasonable risk of bodily harm to others if the employee then is upon the premises, in the possession or control of the employer and the employer knows or has reason to know that it has the ability to control its employee and knows or has reason to know of the

necessity and opportunity for exercising such control. Where this duty is found to exist, a violation of that duty is negligence. . . .

Judge Allsbrook then instructed the jury that it would have to find that 1) the defendant Smith consumed alcohol while on the premises in the possession or under the control of Cianbro, 2) that Smith's impairment was a substantial factor in the driving which caused the collision, 3) that Cianbro knew or through the exercise of reasonable care should have known that Smith had become impaired on the premises within their control or in their possession, 4) that Cianbro knew or should have known that they had the ability to control Smith while on those premises so as to prevent his impairment, 5) that Cianbro knew or should have known of the potential danger to the public from their actions in allowing employees to consume alcohol and then drive on the highway and that their failure to control Smith created an unreasonable risk of harm to the public, 6) and that Cianbro failed to exercise reasonable care to control Smith's conduct by preventing his consumption of alcohol and then driving on the highway.

With respect to causation, the court then instructed the jury:

Furthermore, when one ordinarily has no duty to anticipate negligence on the part of others, a party seeking damages as a result of negligence has the burden of proving not only negligence, but also that such negligence was a proximate cause of the injury or damage. As I previously have instructed you, proximate cause is a real cause, a cause without which the claimed injury or damage would not have occurred and one which a reasonably careful and prudent person could foresee would probably produce injury or some similar injurious result.

There may be more than one proximate cause of an injury, therefore the party seeking damages need not prove that the other party's negligence was the sole or only proximate cause of the injury or even the last act of negligence in sequence of time. She must prove by the greater weight of the evidence only that the other party's negligence was one of the proximate causes of her injury.

We find that in light of our discussion of the applicable law in Part I of this opinion, the trial court correctly instructed the jury on the appropriate principles of common law negligence. We therefore affirm the court's decision and the jury's verdict in all respects.

Affirmed.

Judge WELLS concurs in the result.

Judge MARTIN concurs.