IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| HEIDI SCHUYLEMAN, individually and a Personal Representative of the ESTATE OF JASON LYLE SCHUYLEMAN, and as representative of SERENA SHUYLEMAN, age 14, child of JASON LYLE SCHUYLEMAN and JASON'S stepchildren, HAILEY WOOLSEY, age 7, COLLEEN SHEWEKING, age 10, JULIA SHEWEKING, age 12, and RICHARD LOTHROP, age 20, | ) ) ) ) ) ) ) ) ) ) ) ) | No. 78908-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |
| Appellant, | ) ) | |
| v. | ) ) ) | |
| BP WEST COAST PRODUCTS, LLC, a Delaware Limited Liability Corporation and its affiliates Cherry Point Refinery at Ferndale, Washington, | ) ) ) ) ) ) | |
| Respondent, | ) ) | |
| BRIAN JEFFREY SMITH, as a separate person in his own right, BRIAN JEFFREY SMITH and JANE DOE SMITH, husband and wife and the marital community composed thereof and other unknown parties, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | FILED: July 1, 2019 |

HAZELRIGG-HERNANDEZ, J. — Heidi Schuyleman seeks reversal of an order

dismissing her claims of vicarious liability and negligence against BP West Coast

Products, LLC. Because BP's company Christmas party was aimed toward children and there was no alcohol served or expectation that attendees would be drinking, BP was not a "banquet-hosting employer." Therefore, it is not vicariously liable for the injuries caused by its intoxicated employee when he was driving home over an hour and a half after he left the party. Additionally, because the injury occurred off of BP's premises, BP had no duty to protect third parties from its employee acting outside the scope of employment. We affirm.

## FACTS

BP West Coast Products, LLC, operates the Cherry Point Refinery in Ferndale, Washington. The Cherry Point Rec Club is a volunteer group of refinery employees that organizes the Cherry Point Rec Club Annual Children's Christmas Party each year. The afternoon event is geared toward children aged twelve and younger, and features such activities as face-painting, crafts, and pictures with Santa. Refinery employees, retirees, and contractors are invited to attend the party with their families, but attendance is not compulsory. The organizers track the total number of adult and child attendees but do not track attendance of individual employees. A BP identification badge is required for entry. No alcohol is provided at the party. Although they were not aware of a written rule forbidding drinking at the party, multiple BP employees asserted that the company has a strict drug and alcohol policy at work and that there is typically no drinking at the Christmas party. One Rec Club member asserted that she had never known of anyone drinking or being intoxicated at the party in the 39 years that she had attended the event.

On December 5, 2014, Brian J. Smith left work at the refinery around 5:00 p.m. and drove to the Lynden Fairgrounds to meet his wife and children for the party. Multiple party attendees said that they interacted with Smith and he did not appear intoxicated at the event. Smith and his family left the party shortly after it ended at 7:00 p.m. and went to dinner at the Rusty Wagon. The Smiths were at the restaurant from approximately 7:30 to 8:20 p.m. Their server told co-workers that she thought Smith was drunk because he appeared disoriented and slow to respond to her questions, but she did not smell alcohol on him. She asserted that she had been trained on indicators of intoxication to avoid overservice of alcohol. Smith did not order any drinks at dinner, but admitted he drank one beer after dinner in the parking lot. Smith left the restaurant and drove home alone in his own car.

At approximately 8:43 p.m., as he was driving home, he collided with Jason Schuyleman, who was driving a motorcycle. The trooper who responded to the scene observed that Smith's eyes were bloodshot and watery and his speech was slightly slurred. Smith performed poorly on field sobriety tests, and a voluntary breath sample produced a reading of .145 on the portable breath test at 9:40 p.m. Smith was arrested for driving under the influence. Four hours and 47 minutes after the collision, a blood test measured Smith's blood alcohol content at 0.05 grams per 100 milliliters. Jason Schuyleman died from the injuries he sustained in the collision.

Heidi Schuyleman, individually, as personal representative of Jason's estate, and as representative of each of their children, filed a complaint against

Smith and BP West Coast Products LLC. The complaint alleged that BP was negligent in failing to identify Smith as intoxicated at the Christmas party and vicariously liable for Smith's negligence in driving a motor vehicle while intoxicated. Schuyleman alleged that BP was vicariously liable because Smith had consumed the alcohol at the company party and the party served a business interest of the company.

BP moved for summary judgment, arguing that Schuyleman had not established the elements of vicarious liability or direct negligence and her claims failed as a matter of law. The trial court granted the motion and dismissed all of Schuyleman's claims against BP with prejudice.

## DISCUSSION

Schuyleman contends that the court erred in dismissing her claims of vicarious liability or, in the alternative, direct negligence against BP on summary judgment.

We review summary judgment orders de novo. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). A trial court may properly grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Summary judgment is warranted when the plaintiff has failed to make a factual showing sufficient to establish an essential element of a claim. Young v. Key Pharmaceuticals, Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). When reviewing a dismissal by summary judgment, we accept the affidavits and deposition testimony as verities and

considers all facts and reasonable inferences in the light most favorable to the plaintiff. Dickinson v. Edwards, 105 Wn.2d 457, 461, 716 P.2d 814 (1986).

I.    Vicarious Liability

Generally, an employer is liable for the acts of an employee committed within the scope or course of employment. Nelson v. Broderick & Bascom Rope Co., 53 Wn.2d 239, 241, 332 P.2d 460 (1958). With several exceptions, traveling to or from work is usually not an action within the scope of employment. Aloha Lumber Corp. v. Dep't of Labor & Indus., 77 Wn.2d 763, 766, 466 P.2d 151 (1970). When an intoxicated employee causes an accident after leaving a company party, the "banquet-hosting employer" may be vicariously liable for the plaintiff's injuries in certain instances. Dickinson, 105 Wn.2d at 468. Dickinson introduced this "new application" of the vicarious liability doctrine as follows:

> A plaintiff may recover from a banquet-hosting employer if the following prima facie case is proven:
>
> 1. The employee consumed alcohol at a party hosted by the employer which was held to further the employer's interest in some way and at which the employee's presence was requested or impliedly or expressly required by the employer.
>
> 2. The employee negligently consumed alcohol to the point of intoxication when he knew or should have known he would need to operate a vehicle on some public highway upon leaving the banquet.
>
> 3. The employee caused the accident while driving from the banquet.
>
> 4. The proximate cause of the accident, the intoxication, occurred at the time the employee negligently consumed the alcohol.
>
> 5. Since this banquet was beneficial to the employer who impliedly or expressly required the employee's attendance, the employee negligently consumed this alcohol during the scope of his employment.

The employer is, therefore, vicariously liable under respondeat superior on the ground that the proximate cause of the accident occurred while the employee was acting within the scope of his employment. This action does not affect the "going and coming" rule since it asserts that the proximate cause of the accident occurred at the banquet, before the employee even attempted to drive away. See Comment, Employer Liability for a Drunken Employee's Actions Following an Office Party: A Cause of Action Under Respondeat Superior, 19 Cal. W.L. Rev. 107, 137 (1982) and Chastain v. Litton Sys., Inc., 694 F.2d 957 (4th Cir.1982).

Id. at 468–69.

Dickinson did not define the term "banquet-hosting employer" and did not explicitly state that the employer must have provided the alcohol to the employee to be vicariously liable for the employee's negligence. In that case, the employee had attended a banquet provided by his employer where dinner, champagne, wine, and mixed drinks were served. Id. at 459. The employer paid for the use of the facilities, service, and all of the food and beverages. Id. The banquet order directed the servers to "keep the glasses filled." Id. at 459–60. In Fairbanks, which refined the elements first set out in Dickinson, the banquet-hosting employer held a company Christmas banquet at one of its properties and provided food, wine, and champagne for the guests. Fairbanks v. J.B. McLoughlin Co., 131 Wn.2d 96, 98, 929 P.2d 433 (1997).

When the lead opinion in Dickinson introduced this new theory, it drew the above-quoted language nearly verbatim from analysis proposed in the cited law review comment. See Patrick J. Barry, Comment, Employer Liability for a Drunken Employee's Actions Following as Office Party: A Cause of Action Under Respondeat Superior, 19 Cal. W. L. Rev. 107, 137 (1982). The Comment

addressed "the specific employer-sponsored party situation where an employee becomes intoxicated, attempts to drive home, and injures a third party." Id. at 107. It framed the legal issue as "the conflict between the employer's act of goodwill and the creation of a foreseeable risk of harm to drivers and pedestrians who might encounter the drunken employee." Id. Before reaching the prescriptive portion of the Comment from which Dickinson drew heavily, Barry reviewed general liquor liability laws, liability of social hosts who supply alcohol, and analyzed a specific California case in which an employee caused an accident after drinking alcoholic beverages furnished by his employer at an office Christmas party. Id. at 108.

Schuyleman argues that the language of Dickinson and Fairbanks does not indicate that the alcohol must be furnished by the employer for it to be vicariously liable. Although the elements as written do not include this specific language, the court's rationale does not support Schuyleman's position. There would be no foreseeable risk of harm to third parties from an employee driving home from a company party at which the employer did not provide alcohol or encourage drinking. Schuyleman also contends that there would be no consequences for an employee who drank to intoxication on the job and then drove and injured a third party if the employer did not directly supply or encourage the drinking. However, the banquet-hosting employer analysis would not apply if there was no party furthering the employer's interests.

We decline to apply the banquet-hosting employer analysis for vicarious liability to an employer who did not supply alcohol to employees or explicitly or implicitly condone drinking at an afternoon company Christmas party aimed toward

young children. The trial court did not err in dismissing Schuyleman's claim of vicarious liability.

## II. Negligence

Schuyleman contends in the alternative that BP was directly negligent in failing to anticipate and prevent an employee from leaving the event in an intoxicated condition and driving on rural roads after dark. To establish direct negligence, Schuyleman must show "(1) the existence of a duty owed to the complaining party; (2) a breach of that duty; (3) a resulting injury; and (4) that the claimed breach was the proximate cause of the injury." Hansen v. Friend, 118 Wn.2d 476, 479, 824 P.2d 483 (1992) (citing Pedroza v. Bryant, 101 Wn.2d 226, 228, 677 P.2d 166 (1984)).

Generally, there is no duty to protect another from the actions of a third person. Tallariti v. Kildare, 63 Wn. App. 453, 458, 820 P.2d 952 (1991). However, in certain instances, an employer has a duty to control an employee acting outside the scope of employment:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
>     (a) the servant
>         (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>         (ii) is using a chattel of the master, and
>
>     (b) the master
>         (i) knows or has reason to know that he has the ability to control his servant, and
>         (ii) knows or should know of the necessity and opportunity for exercising such control.

Id. (quoting Restatement (Second) of Torts § 317 (Am. Law. Inst. 1965). In Tallariti, the plaintiffs filed a negligence claim against an employer after an employee drank to intoxication on the employer's job site, left to drive home, and collided with the plaintiff. Id. at 454–55. This court found that "unless the employee is using a chattel of the master, an employer has a duty to protect third persons only from acts of an employee that are committed while the employee is on the employer's premises." Id. at 458–59 (citing Restatement (Second) of Torts § 317(a) (Am. Law. Inst. 1965)) (emphasis in original). Because the employee was "miles from the jobsite" when he caused the injuries to the plaintiffs, this court found that the employer owed no duty to the plaintiffs. Id. at 459.

As in Tallariti, Schuyleman's injuries occurred away from BP's premises, and therefore BP owed no duty to Schuyleman under section 317 of the Restatement. Schuyleman argues that the Tallariti court did not consider the holding in Dickinson that "the relevant conduct of the drunk employee driver is the conduct that occurs at the company party[.]" She argues that section 317 imposes a duty on the employer to control the employee while on the premises to prevent the employee from drinking to intoxication so as to create an unreasonable risk of harm to others when he leaves the premises. However, this court cited Dickinson to distinguish Tallariti from the scenario in which the employer furnished alcohol to the employee. Tallariti, 63 Wn. App. at 459–60. There is no indication that the Tallariti court failed to consider Dickinson. Also, as BP noted in its briefing, the Dickinson banquet-hosting employer analysis involved vicarious employer liability

for breach of the employee's own duty of care rather than any duty that the employer owed to third parties directly. Dickinson, 105 Wn.2d at 457.

Schuyleman argues that a North Carolina case found that section 317 of the Restatement applied in a similar factual scenario. In that case, the Court of Appeals found that the employer had a duty to control the actions of the employee when supervisory personnel were aware that employees commonly met in the parking lot of the work site to drink beer before driving home and the action violated company policy. Peal ex rel. Peal v. Smith, 115 N.C. App. 225, 226, 233, 444 S.E.2d 673 (1994). The court found that "the common law duty of a master to control his servant under certain circumstances as outlined in Restatement § 317, taken together with the defendants' own written policies established a standard of conduct that if breached could result in actionable negligence." Id. at 233.

However, the fact that supervisory personnel were aware of the activity is a significant factual distinction from the present case. Also, as BP pointed out in its briefing, Peal was upheld by the North Carolina Supreme Court in an equally divided, per curiam opinion and therefore "the decision of the Court of Appeals is left undisturbed and stands without precedential value." Peal ex rel. Peal v. Smith, 340 N.C. 352, 352, 457 S.E.2d 599 (1995). We elect not to rely on this decision rather than relevant case law from Washington courts.

Because BP had no duty to protect third parties from the acts of its employees acting outside the scope of employment and off of BP's premises, the trial court properly dismissed Schuyleman's negligence claim.

Affirmed.

WE CONCUR: