Donna WADLEY, et. al., Plaintiffs,

v.

Ricardo ASPILLAGA, et
al., Defendants.

No. Civ.A. 00–01885RCL.

United States District Court,
District of Columbia.

Aug. 6, 2001.

Patrick Michael Regan, Regan, Halperin & Long, P.L.L.C., Washington, DC, for plaintiff.

Christopher E. Hassell, Bonner, Kiernan, Trebach & Crociata, Washington, DC, David Alan Rosenberg, Ford & Harrison, LLP, Washington, DC, for defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

Now before the Court are motions by defendants Intelsat, Cowan, and Stoner to dismiss the complaint for failure to state a claim upon which relief can be granted; a motion by plaintiffs to amend the complaint to add a claim of vicarious liability against Intelsat; and a motion by plaintiffs to convert defendants' motions to dismiss into summary judgment motions. Upon consideration of these motions and the supporting documents, the oppositions and replies thereto, the entire record and the relevant law, the Court DENIES Intelsat's motion to dismiss, GRANTS Cowan's and Stoner's motion to dismiss, GRANTS plaintiffs' motion to amend, and DENIES plaintiffs' motion to convert the defendants' motions into summary judgment motions.

## BACKGROUND

Plaintiff Donna Wadley is the mother and a personal representative of the decedent, Seth Wadley. Plaintiff Alfred Wadley is the father and a personal representative of Seth Wadley. Defendant Ricardo Aspillaga is an employee of Prism Corporation who worked at International Telecommunications Satellite Organization's ("Intelsat") offices. Defendant Intelsat is a corporation located in Washington, D.C. Defendant Nancy Cowan is an agent of Intelsat. Finally, Defendant Edward Stoner is also an agent of Intelsat.

Defendants Intelsat, Cowan, and Stoner have moved to dismiss the complaint against them for plaintiffs' failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs have filed a motion, pursuant to Fed. R.Civ.P. 15(a), seeking to amend the complaint a second time to add a claim for vicarious liability. Plaintiffs have also filed a motion seeking to convert Defendants' rule 12(b)(6) motions into summary judgment motions, and then have asked this Court, pursuant to Fed.R.Civ.P. 56(f), to permit discovery regarding the material factual differences.

### Facts

The facts must be viewed in the light most favorable to the plaintiffs. Aspillaga is a network administrator who worked exclusively at Intelsat's Offices for four months. (Pl.'s Second Am.Compl., ¶ 23). Aspillaga, moreover, worked alongside Intelsat employees who held identical positions as Aspillaga. (Id. at ¶ 24). In addition, Aspillaga's direct supervisor was an employee of Intelsat. (Id.). This supervisor exercised control over the performance of Aspillaga's work and the manner in which the work was done. (Id.). However, Aspillaga was paid by Prism. (Pl.'s Mot. to Am.Compl. to add vicarious liability, p. 5).

On December 18, 1999, Aspillaga was invited to and attended a holiday party hosted by Intelsat. (Pl.'s Am.Compl., ¶ 15). The holiday party was held at the Renaissance Hotel located at 999 Ninth Street, N.W., in Washington, D.C. (Id.). While at the party, Aspillaga consumed alcoholic beverages. (Id. at ¶ 16). After the party ended at approximately 1:00 a.m., (Id. at ¶ 17), Aspillaga attended an "after-party" party where he consumed more alcohol. (Id. at ¶ 19). This after-party was hosted by Cowan, Stoner, and/or

Intelsat in a suite at the Renaissance Hotel. (*Id.* at ¶ 18).

Aspillaga was obviously intoxicated during the party and after-party, (*Id.* at ¶ 20); however, no attempts were made by Cowan, Stoner, or any other Intelsat employees to monitor or control the alcohol intake of any of their guests. (*Id.* at ¶¶ 20–21). Moreover, no steps were taken by these defendants to prevent intoxicated attendees of their party from operating a motor vehicle. (*Id.* at ¶ 22). Aspillaga later left the party and proceeded to drive his automobile. (*Id.* at ¶ 11).

At approximately 3:45 a.m., on December 19, 1999, Seth Wadley was lawfully crossing the street as a pedestrian, heading northbound at the intersection of 11th and G Streets, N.W., in Washington, D.C. (*Id.* at ¶ 10). At the same time and place, Aspillaga was driving his automobile westbound on G street, at its intersection with 11th Street. (*Id.* at ¶ 11). Suddenly, and without warning, Aspillaga ran a red light at an excessive rate of speed and struck Seth Wadley with his automobile. (*Id.* at ¶ 12). As a result of this collision, Seth Wadley later died. (*Id.*).

After the accident, Aspillaga proceeded to flee the scene of the accident. (*Id.* at ¶ 13). He was later arrested by a police officer in Arlington County, Virginia. (*Id.*). At all relevant times, Aspillaga was extremely intoxicated. (*Id.* at ¶ 14).

### ANALYSIS

Plaintiffs have stated a cause of action for vicarious liability by alleging Intelsat furthered its own business interests by hosting a holiday party and an after party where Aspillaga was negligently furnished with alcohol. The claims against Cowan and Stoner, however, must be dismissed because the District of Columbia does not recognize a cause of action for business host liability. Plaintiffs, who also seek to amend their complaint a second time, have failed to prejudice defendants by intentionally stalling or repeatedly failing to correct their complaint. The District of Columbia has not yet considered liability against "business hosts" based upon vicarious liability or the negligent furnishment of alcohol. A number of other jurisdictions, however, have examined such claims.[1]

If a plaintiff has failed "to state a claim upon which relief can be granted," a court may grant a defendant's motion to dismiss. Fed.R.Civ.P. 12(b)(6); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C.Cir.2000). "Dismissal under Rule 12(b)(6) is proper when, taking the material allegations of the complaint as admitted ... and construing them in plaintiff['s] favor ... the court finds that the plaintiff has failed to allege all the material elements of his cause of action." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 623 (D.C.Cir.2001) (internal citations omitted). A court, however, should not use Rule 12(b)(6) "to weed out what appear to be factually deficient cases...." *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C.Cir.2000).[2]

1. The issues presented in this case are District of Columbia questions of law, and the District's law will be applied here. *See, e.g., Haddon v. U.S.*, 68 F.3d 1420, 1423 (D.C.Cir.1995) (citation omitted).

2. Plaintiffs have also submitted a motion asking this Court to turn defendants' 12(b)(6) motions into Rule 56 motions, and then, pursuant to Fed.R.Civ.P. 56(f), permit discovery on those claims. However, this Court will not consider the alleged factual disputes raised by the plaintiffs and defendants. Instead, for purposes of this motion, all factual allegations made by plaintiffs will be accepted as true and this Court will only consider whether the law permits a cause of action for those claims. Therefore, plaintiffs' motion to

## Social Host Liability

■ Defendants Intelsat, Cowan, and Stoner, if they hosted the Christmas party and after-party for social reasons, will not be liable to plaintiffs. Social hosts have no duty and are not liable to parties who are injured when alcohol is served to social guests. *See, e.g., Chastain v. Litton Sys.*, 694 F.2d 957, 960 (4th Cir.1982) (stating North Carolina common law does not permit recovery against a social host); *Hill v. Honey's, Inc.*, 786 F.Supp. 549, 550 (D.S.C. 1992) (explaining a social host is free from liability to third parties when he serves alcohol in South Carolina (citing *Garren v. Cummings & McCrady, Inc.*, 289 S.C. 348, 345 S.E.2d 508, 510 (Ct.App.1986))); *Wright v. Sue & Charles, Inc.*, 131 Md. App. 466, 749 A.2d 241, 247 (Md.2000) ("Maryland does not recognize a cause of action for social host liability"); Dan B. Dobbs, The Law of Torts § 332 (1st ed. 2000) ("Social host liability today remains the exception rather than the rule."); *but see Makynen v. Mustakangas*, 39 Mass. App.Ct. 309, 655 N.E.2d 1284, 1285–87 (1995) (allowing liability to be imposed upon a social host for serving an obviously intoxicated person); *Wiener v. Gamma Phi Chapter of Alpha Tau Omega Fraternity*, 258 Or. 632, 485 P.2d 18, 21 (1971) (permitting social host liability against parties who had reason to know the people alcohol was served to might do unreasonable things).

■ Here, the District of Columbia has no statutory or common law cause of action that imposes liability on social hosts.[3]

Moreover, the majority of jurisdictions do not recognize social host liability. Many reasons exist for this legal decision. For example, social hosts do not receive a monetary benefit from serving alcohol to guests. In addition, social hosts may lack the ability to determine when a guest is intoxicated. Finally, social hosts do not fall under the same regulatory schemes that providers of alcohol do; therefore, the legislature has made a decision to not monitor social hosts in the same fashion to ensure compliance. If the District of Columbia wishes to impose liability on social hosts, the City Council or Congress may enact a law imposing this type of liability. However, absent any legislative guidance, social hosts in the District of Columbia are not liable for injuries caused by intoxicated guests.

## Vicarious Liability

■ Plaintiffs, who allege Aspillaga was acting within the scope of his employment when he attended the holiday party because Intelsat's business interests were furthered, have sufficiently stated a cause of action that can survive a motion to dismiss. "In order to succeed under the respondeat superior theory of liability, [plaintiff] must show that a master-servant relationship existed between [Aspillaga] and [Intelsat], and that the incident at issue occurred while [Aspillaga] was acting within the scope of his employment." *Moorehead v. District of Columbia*, 747 A.2d 138, 142 (D.C.2000) (citing *Giles v. Shell Oil Corp.*, 487 A.2d 610, 611 (D.C. 1985)).

convert defendants' motions for dismissal into summary judgment motions is denied.

**3.** The District of Columbia has yet to rule on this precise issue. However, the District of Columbia Court of Appeals has briefly addressed this issue in dicta and dissent. "The dissent suggests that by our holding today we step upon a slippery slope, heading inexorably toward judicial recognition of social host liability in this jurisdiction.... Of course, the question of social host liability is not presented by this case and we suggest no view here as to that question." *Rong Yao Zhou v. Jennifer Mall Rest.*, 534 A.2d 1268, 1277 n. 7 (D.C. 1987).

*Employment Relationship*

■ Aspillaga, although he was paid by Prism, was allegedly a servant of Intelsat because the supervisor that directly controlled Aspillaga worked for Intelsat.

> This court considers several factors when determining whether there is [a master-servant] relationship: (1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer.

*Moorehead,* 747 A.2d at 143 (citing *District of Columbia v. Hampton,* 666 A.2d 30, 38 (D.C.1995)).

■ Even a worker classified as an independent contractor may still subject his contracting employer to liability. *Safeway Stores, Inc. v. Kelly,* 448 A.2d 856, 861 (D.C.1982). There, a security guard working for a security company that Safeway hired attacked a customer of the store. *Id.* at 858. Safeway stated it did not hire, pay, train, or tell the guard how to do his work. *Id.* at 858. However, the store manager would retain operational control over the guard and set the guard's hours. *Id.* at 858–859. In addition, the store manager could ask to "replace a guard with whom he had become dissatisfied." *Id.* at 859. Finally, "if a store manager encountered problems with a customer and needed a guard's assistance, the guard would act under the general direction of the manager." *Id.* The court concluded, based upon the master-servant factors, evidence existed upon which a reasonable jury could have found the guard was a servant and not an independent contractor. *Id.* at 861; *but see Moorehead,* 747 A.2d at 144–45 (stating that special police officers appoint-

ed by the mayor were not under the control of the District; therefore, the District would not be subject to vicarious liability for torts committed by special police officers).

■ Here, plaintiffs have alleged that Aspillaga was under the control of Intelsat. His direct supervisor was an employee of Intelsat. Aspillaga also worked at Intelsat's offices for a continuous and exclusive period of four months. Aspillaga, however, was paid by Prism. Still, this fact alone is not enough to dismiss the complaint. The facts regarding the remaining *Moorehead* employment factors are unclear, but plaintiffs have alleged enough to meet the liberal pleading requirements of the Federal Rules of Civil Procedure.

*Scope of Employment*

■ Aspillaga, for purposes of this motion, acted within the scope of his employment when he attended a holiday party that allegedly furthered the business interests of Intelsat. Employees acting within their scope of employment subject their employers to vicarious liability if they become intoxicated and injure a third party. *Chastain,* 694 F.2d at 962.

> According to the Restatement, the [c]onduct of a servant is within the scope of employment if, but only if: [1] it is of the kind he is employed to perform; [2] it occurs substantially within the authorized time and space limits; [3] it is actuated, at least in part, by a purpose to serve the master; and [4] if force is intentionally used by the servant against another, the use of force is not unexpected by the master.

*Haddon v. U.S.,* 68 F.3d 1420, 1423–24 (D.C.Cir.1995) (citing Restatement (Second) of Agency § 228).[4]

---

4. "As its framework for determining whether an employee acted within the scope of em-

ployment, the Court of Appeals for the District of Columbia looks to the Restatement

Employers who host events that are "sufficiently related" to the company's business interests place their employees with the scope of their employment. *Chastain,* 694 F.2d at 962. In *Chastain,* the defendant's employees were required to check in at a Christmas party that began at approximately 8:00 a.m. to receive payment for that day. *Id.* at 959. The party was held on the defendant's property, and a number of employees became intoxicated with alcohol the defendant furnished. *Id.* Later in the day, one employee who was drinking at the party left in his automobile and collided with another vehicle, causing injuries to the other driver that resulted in her death. *Id.* The court concluded the Christmas party, if not a purely social occasion, would bring an employee within the scope of his employment. *Id.* at 962; *see also Fairbanks v. J.B. McLoughlin Co.,* 131 Wash.2d 96, 929 P.2d 433, 435 (1997) (explaining plaintiff must prove among other things, the "party hosted by the employer [ ] was held to further the employer's interest in some way and at which the employee's presence was requested or impliedly or expressly required by the employer.") (citing *Dickinson v. Edwards,* 105 Wash.2d 457, 716 P.2d 814, 819 (1986)); *Cf. Honey's, Inc.,* 786 F.Supp. at 551 (holding that the employer's party was a social event; thus the employee was not acting within the scope of her employment when drinking at a party or when she was driving home afterwards).[5]

Not all jurisdictions, however, recognize a cause of action for employee liability in this situation. For example, West Virginia has stated that an employer is not subject to liability when an intoxicated employee injures a third party, even if the employer exercises control over the employee. *See Overbaugh v. McCutcheon,* 183 W.Va. 386, 396 S.E.2d 153, 158–59 (1990). While the court in *Overbaugh* did leave a possible exception open, *Id.* at 159 n. 9, it stated, "we equate the imposition of liability on the employer in this case to the imposition of liability on a social host as previously discussed and conclude that no liability exists under the facts presently before the Court." *Id.* at 159.[6]

Here, this Court finds the rationale of the 4th Circuit in *Chastain* persuasive. Intelsat hosted a Christmas party where Aspillaga became highly intoxicated. If Aspillaga was acting within the scope of his employment while at the holiday party, then Intelsat should have been able to control the amount of alcohol that he consumed. Intelsat, as Aspillaga's master, would then be responsible for acts committed while under the control of the company. Furthermore, the proximate cause of

---

(Second) of Agency (1957)." *Haddon v. U.S.,* 68 F.3d 1420, 1423 (D.C.Cir.1995) (citing *Moseley v. Second New St. Paul Baptist Church,* 534 A.2d 346, 348 n. 4 (D.C.1987)).

**5.** The third party must also prove: (1) the employee negligently consumed alcohol to the point of intoxication when he knew or should have known he would be driving (the negligent act); (2) the employee caused the accident while driving from the event (factual causation); and (3) the proximate cause of the accident, the intoxication, occurred when the employee consumed alcohol in a negligent fashion. *J.B. McLoughlin Co.,* (cont.) 929 P.2d at 435 (citing *Dickinson,* 716 P.2d at

819). Here, based on the pleadings, this Court concludes plaintiffs have stated a claim that can survive a 12(b)(6) motion. Plaintiffs claim Aspillaga drank till he was intoxicated, he drove, he caused the accident, and his high blood alcohol level was the proximate cause of the accident. Finally, in a vicarious liability situation, the employer has no duty to the third party itself.

**6.** For a more complete listing of cases that have examined the issue of employer liability, *see* David M. Holliday, Annotation, *Intoxicating Liquors: Employer's Liability for Furnishing or Permitting Liquor on Social Occasion,* 51 A.L.R.4th 1048 (1987).

the accident would be the consumption of alcohol. Aspillaga, as the facts have been alleged by plaintiffs, could only commit this while under the control of Intelsat.

However, this Court is wary to conclude a holiday party could be construed as an event that would further Intelsat's business. Nevertheless, plaintiffs have alleged the party aided Intelsat and Aspillaga was a servant of Intelsat. A motion to dismiss is not the time to make decisions on the factual bases for plaintiffs' claims. Still, plaintiffs' allegation that Intelsat's business interests were furthered because the holiday party "was designed only to promote relations amongst corporate employees," is not enough to survive summary judgment. (Pl.'s Opp. at 15). Rather, plaintiffs must meet their burden by producing evidence showing Intelsat's interests were furthered by hosting the party.[7] Companies host many formal and informal events, but not all of these events advance a company's business plans. Sometimes events are purely social and allow a company's employees to interact in a social setting with their co-workers. If this party was a purely social experience for Intelsat's employees and Intelsat's business interests were not sufficiently related to the party, then plaintiffs cannot recover on a claim for vicarious liability.

Defendants, though, may not dispute that Aspillaga was not in the scope of his "constructive employment" because he was driving home.[8] While a master is not generally subject to liability when the employee is "going or coming," a master may be subject to liability when an intoxicated servant leaves a business function. A master is usually not the proximate cause of a driving accident caused by a sober employee driving home from work; it is unforeseeable that the servant would get in an accident and injure another party by driving home from work. However, it is very foreseeable that an intoxicated servant would get in an accident and injure a third party when he drives home intoxicated from a business function where alcohol was provided. Therefore, the "going or coming" rule is not applicable here.

Instead, defendants may dispute whether Aspillaga was in the scope of his "constructive employment" while at the Christmas party. Defendants could show Aspillaga was not a servant of Intelsat, or they could show the Christmas party was not sufficiently related to Intelsat's business interests because it was a social event. If plaintiffs fail to sufficiently meet their burden on either of these two issues, they may not recover against Intelsat.

### Business Host Liability

Plaintiffs, who have alleged Intelsat, Cowan, and Stoner negligently furnished alcohol by continuing to serve Aspillaga when he was obviously drunk, have failed to state a valid cause of action for business host liability.[9] The District of

---

7. This situation differs markedly from *Chastain*. Plaintiff here was not required to come to the party. The party was also at night, at another location. Therefore, the party here could be considered a purely social event.

8. For purposes of this issue, the court will treat Aspillaga as the employee and Intelsat as the employer even though this Court, or the plaintiffs for that matter, does not feel Aspillaga is an employee of Intelsat. However, the relationship that is critical is not the employee-employer relation; but rather, the master-servant relationship. Therefore, this Court will use the term "constructive employee" to describe the relationship between Aspillaga and Intelsat.

9. The denial of the business host liability cause of action is not inconsistent with the granting of the cause of action for vicarious liability. Business hosts are not liable simply because they furnish alcohol to employees or any other person. In this situation, business

Columbia only assesses liability against tavern owners who serve obviously intoxicated parties that injure a third party. *Rong Yao Zhou v. Jennifer Mall Rest.*, 534 A.2d 1268, 1276 (D.C.1987); *Cf. Jarrett v. Woodward Bros., Inc.*, 751 A.2d 972, 985 (D.C.2000) (stating D.C. code "provides the basis for civil liability by a tavern owner to an injured underage intoxicated person. . . .").

In *Rong Yao*, the District of Columbia Court of Appeals examined a statute preventing alcohol from being served to any intoxicated person.[10] *Rong Yao*, 534 A.2d at 1271. The statute, which has a public safety purpose, created a "duty of care that tavern keepers owe the public." *Id.* at 1275. The court stated that "[i]ncorporating into the common law a standard of care set by a legislative enactment is distinct from determining that a cause of action arises, by implication, under a statute." *Id.* at 1273. However, if a court wishes to determine that a statute impliedly states a cause of action, the court must interpret that the statute meant something other than what the legislature "provided expressly." *Id.* at 1273–74 (citations omitted). The court concluded the alcohol control statute created a cause of action against tavern owners, "and that's its unexcused violation constitutes negligence per se, i.e., breach of the duty of care that *tavern owners* owe to the public." Id. at 1275 (emphasis added); *Cf. Over-*

*baugh*, 396 S.E.2d at 159 ("[W]e equate the imposition of liability on the employer in this case to the imposition of liability on a social host as previously discussed and conclude that no liability exists under the facts presently before the Court.").

Some jurisdictions, however, have concluded that business hosts who negligently furnish alcohol to intoxicated employees or coworkers may be liable to third parties injured by that intoxicated employee. *Chastain*, 694 F.2d at 961. There, a North Carolina statute stated "It shall be unlawful for a permittee or his employee or for an ABC [Alcohol Beverage Control] store employee to knowingly sell or give alcoholic beverages to any person who is intoxicated." *Id.* The court then added while this law usually pertains only to licensees, it "discloses[s] state policy toward persons who dispense alcoholic beverages in capacities other than social hosts." *Id.* Therefore, if the defendants were not social hosts, they would be the proximate cause of the decedent's death because they failed to exercise ordinary care in furnishing alcohol. *Id.* at 692; *see also Dickinson*, 716 P.2d at 816, 819 (Wash.1986) (the furnishment of alcohol is the proximate cause of the accident; thus, liability can be imposed on the server in a non-social setting).

■ Here, this Court finds that the District did not intend to impose liability

---

hosts are extremely similar to social hosts. However, a master that is vicariously liable for its servant is liable because it controls the servant, not because the master furnished the alcohol. Thus, the key issue for vicarious liability is not whether the employer furnished the alcohol. Instead, the key issues are whether the event that the servant attended is within the scope of the servant's "employment" and whether this event is the proximate cause of the accident.

10. "No person being the holder of a retail license issued pursuant to this chapter shall

permit on the licensed premises the consumption of alcoholic beverages, except as permitted in subsections (i) and (j) of this section, by any person under the age of 21 years, by any intoxicated person, or any person of notoriously intemperate habits, or any person who appears to be intoxicated. No licensee shall be liable to any person for damages claimed to arise from refusal to permit the consumption of any beverage on any premises licensed under this chapter." D.C.Code Ann. § 25–121(b).

on persons other than tavern owners. D.C.Code Ann. § 25–121(b), the statute relied upon in *Rong Yao,* only places its burdens on "the holder of a retail license" who sells alcohol on his premises. D.C.Code Ann. § 25–121(b). No statute exists that illustrates City Council's (or Congress's) desire to impose liability on any party other than tavern keepers. If the District of Columbia wishes to impose liability upon business hosts, then it is free to change its current statutory system to permit suits of this nature. However, without any statutory guidance, this Court refuses to allow a cause of action that permits liability to be imposed on an extremely broad class of potential litigants.

### The Amended Complaint

 Plaintiffs have stated a cause of action for vicarious liability and have not prejudiced defendant, stalled intentionally, or repeatedly failed to correct defects in their complaint. "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Leave to amend should be freely given "unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive ... repeated failures to cure deficiencies by [previous] amendments ... [or] futility of amendment.'" *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir.1996) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

Here, plaintiffs' second amended complaint, stating a new cause of action for vicarious liability, is not futile. *Infra,* at 7–14. Moreover, plaintiffs sought to amend their complaint early in the proceedings. In addition, plaintiffs are only seeking to add a cause of action for vicarious liability against Intelsat, a claim plaintiffs addressed in their opposition to dismiss.

(Pl.'s Opp. at 25). Therefore, Intelsat had ample opportunity to address this point in its response to plaintiffs' opposition to the motion to dismiss, as well as in its opposition to plaintiffs' motion to amend.

Furthermore, defendants are not prejudiced by plaintiffs' amendment. No discovery has yet been taken. Additionally, plaintiffs claim to have obtained new information. While defendants dispute how new this information really is, leave should be freely given. Therefore, because plaintiffs meet all the other criteria for leave to amend, the motion to amend will be granted.

### Further Proceedings

Two threshold issues exist in plaintiffs' remaining cause of action, vicarious liability. Plaintiffs must establish: (1) Aspillaga was a servant of Intelsat; and (2) Intelsat's holiday party was not a social gathering. If plaintiffs cannot establish both of these elements, then plaintiffs' case will not survive summary judgment.

This Court has already expressed concern for whether Aspillaga was an employee of Intelsat and whether the party was anything more than a social gathering. Thus, discovery will bifurcated into two phases. Plaintiffs and defendants will have ninety days of discovery to determine whether Aspillaga was a servant of Intelsat and whether the holiday party was a social event. Thereafter, any litigant who wishes to file a dispositive motion must do so within ten days from the end of discovery.

If plaintiffs are able to establish both critical issues, further discovery will be granted with respect to the remaining issues. At the end of this final discovery period, litigants may once again file dispositive motions. If plaintiffs survive this stage, then all the evidence will be presented to a jury in a trial.

## CONCLUSION

For the reasons set forth herein, the Court DENIES defendants' motion to dismiss, GRANTS Cowan's and Stoner's motion to dismiss, GRANTS plaintiffs' motion to amend, and DENIES plaintiffs' motion to convert defendants' motion to dismiss into summary judgment motions.

## *ORDER*

For the reasons set forth in an accompanying memorandum opinion, it is hereby

ORDERED that Intelsat's motion to dismiss is DENIED; further, it is

ORDERED that Cowan's and Stoner's motion to dismiss is GRANTED; further, it is

ORDERED that plaintiffs' motion to amend their complaint is GRANTED; further, it is

ORDERED that plaintiffs' motion to convert the motions to dismiss into summary judgment motions is DENIED; further, it is

ORDERED that plaintiffs and defendants will have NINETY days from the date of this order to conduct discovery concerning Aspillaga's employment relationship with Intelsat and the purpose of the holiday party; further, it is

ORDERED that dispositive motions be filed within TEN days from the end of the initial discovery period.

SO ORDERED.