Donna **WADLEY**, et al. Plaintiffs,

v.

Ricardo **ASPILLAGA**, et al. Defendants.

No. CIV. 00–1885(RCL).

United States District Court, District of Columbia.

May 22, 2002.

Patrick Michael Regan, Regan, Halperin and Long, Washington, DC, for Plaintiff.

Stephen Alfred Bou, Bou and Bou, Washington, DC, for Defendant Ricardo Aspillaga.

David Alan Rosenberg, Ford & Harrison, Washington, DC, for Defendant Intelsat.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

Now before the Court is defendant International Telecommunications Satellite (Intelsat) Organization's Motion for Summary Judgment, plaintiffs' opposition thereto, and defendant's reply. The Court will GRANT defendant Intelsat's Motion for Summary Judgment.

## I. Background

Plaintiff Donna Wadley is the mother and a personal representative of the decedent, Seth Wadley. Plaintiff Alfred Wadley is the father and a personal representative of Seth Wadley. Defendant Ricardo Aspillaga was an employee of Prism Corporation who was contracted to work at Intelsat's offices. Defendant Intelsat is a corporation located in Washington, D.C.

This litigation is based upon a tragic car accident which occurred on December 18, 1999. Defendant Aspillaga, an employee of Prism Corporation who was then contracted to work for Intelsat, attended the Intelsat holiday party at the Renaissance Hotel in Washington, D.C. Alcohol was provided at the holiday party and at an "after-party" party held in one of the hotel rooms. Defendant Aspillaga was intoxicated when he left the Renaissance Hotel at approximately 3:30 a.m. on December 18, 1999.

At approximately 3:45 a.m., Seth Wadley was lawfully walking across the street, heading northbound at the intersection of 11th and G Street, N.W. At the same time and place, defendant Aspillaga was driving his automobile westbound on G Street through the same intersection. Defendant Aspillaga ran a red light at an excessive rate of speed and struck Seth Wadley with him automobile. As a result of this collision, Seth Wadley died.

Defendant Aspillaga fled the scene of the accident, and was later arrested in Arlington County, Virginia. Neither party contests the fact that defendant Aspillaga was intoxicated, nor does any party contest the fact that defendant Aspillaga was intoxicated due to liquor consumed at the

Intelsat holiday party and the "after-party" party.

On August 6, 2001, this Court denied defendant Intelsat's Motion to Dismiss and permitted plaintiffs to add a claim for vicarious liability against defendant Intelsat. In order for a vicarious liability claim to stand against defendant Intelsat, plaintiffs would be required to prove that defendant Aspillaga was in the employ of Intelsat and was acting within the scope of his employment when he struck and killed Seth Wadley. In order to determine whether plaintiffs have a viable claim of vicarious liability, the Court authorized plaintiffs to conduct discovery on the following two questions: (1) whether Aspillaga was a servant of Intelsat; and (2) whether Intelsat derived a corporate benefit from the holiday party. In the August 6, 2001 Order, the Court ordered the parties to file dispositive motions after the close of discovery on those questions; defendant Intelsat has now filed a dispositive motion on the basis of that discovery.

## II. Analysis

Pursuant to Federal Rule of Procedure 56, this Court may grant summary judgment only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Curtin v. United Airlines, Inc.*, 275 F.3d 88 (D.C.Cir.2001). All facts must be viewed in the light most favorable to the non-moving party. *Breen v. Dept. of Transportation*, 282 F.3d 839, 841 (D.C.Cir.2002). "Even where basic facts are not in dispute, summary judgment is inappropriate if the parties disagree about the inferences that properly may be drawn from the facts." *See Chastain v. Litton Systems, Inc.*, 694 F.2d 957, 960 (4th Cir.1982). The question that this Court must now decide, pursuant to these guidelines of review, is whether plaintiffs have established a factual basis upon which a reasonable juror could find that defen-

dant Aspillaga was acting within the scope of his employment when he struck and killed Seth Wadley. "If Aspillaga was acting within the scope of his employment while at the holiday party, then Intelsat should have been able to control the amount of alcohol that he consumed." *Wadley v. Aspillaga*, 163 F.Supp.2d 1, 8 (D.D.C.2001).

■ In order to determine whether defendant Aspillaga was acting within the scope of his employment, and consequently whether Intelsat may be held vicariously liable for his actions, this Court applies that law of the District of Columbia, which is drawn from the Restatement (Second) of Torts. *Haddon v. United States*, 68 F.3d 1420, 1423–24 (D.C.Cir.1995). The Restatement provides that the

> [c]onduct of a servant is within the scope of employment if, but only if: (1) it is of the kind he is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the master; and (4) if force is intentionally used by the servant against another, the use of force is not unexpected by the master.

Restatement (Second) of Agency § 228. Applying these factors, this Court has held that defendant Aspillaga's actions would be in the scope of employment if plaintiffs are able to show that Intelsat exercised control over defendant Aspillaga and that the holiday party sufficiently furthered Intelsat's corporate interests. Because defendant Intelsat has conceded for purposes of summary judgment that there is a genuine issue of fact as to whether Intelsat exercised control over Aspillaga while he worked at Intelsat, *see* Def. Mot. Dismiss at 4 n. 6, the only issue now before the Court is whether Intelsat's corporate interests were sufficiently furthered by the holiday party.

■ In discussing whether corporate interests were furthered by the holiday party, this Court held that "[e]mployers who host events that are 'sufficiently related' to the company's business interests place their employees within the scope of their employment." *Wadley v. Aspillaga*, 163 F.Supp.2d 1, 8 (D.D.C.2001) (citing *Chastain v. Litton Systems, Inc.*, 694 F.2d 957 (4th Cir.1982)). Events which have, however, a purely social purpose may not support a claim of vicarious liability, even if the social interaction between employees incidentally confers quasi-corporate benefits like employer-employee goodwill or encouragement to employees to work harder or continue employment with the corporation. *See id.* at 9. *But see Wong–Leong v. Hawaiian Indep. Refinery Inc.*, 879 P.2d 538 (Haw.1994) (finding that it was plausible to believe that employee was acting within scope of employment when consuming alcohol at a company party which served as a "morale builder for the employees"). The determination of whether a company-sponsored party was a "purely social event" or one that was designed to provide corporate benefit is a fact-intensive inquiry; prior courts have examined facts such as categories of invitees, the time of the event, the form of the invitation, whether or not invitees were paid for their attendance, location of the event, remarks given at the event, regularity of the event, who purchased the alcohol, and others. *See, e.g., Chastain v. Litton Systems, Inc.*, 694 F.2d 957 (4th Cir.1982); *Fairbanks v. J.B. McLoughlin Co. Inc.*, 131 Wash.2d 96, 929 P.2d 433 (1997); *Camalier v. Jeffries*, 340 N.C. 699, 460 S.E.2d 133 (1995); *Wong–Leong v. Hawaiian Indep. Refinery Inc.*, 879 P.2d 538 (Haw.1994); *Harris v. Trojan Fireworks Co.*, 120 Cal. App.3d 157, 174 Cal.Rptr. 452 (Cal.Ct.App. 1981).

In the instant case, the Court finds that even when the evidence is viewed in the light most favorable to the plaintiffs, no reasonable juror could conclude that the holiday party sufficiently advanced Intelsat's business interests. For the reasons stated, the Court will grant defendant Intelsat's motion for summary judgment.

■ The following facts cause the Court to find that Intelsat's business interests were not significantly advanced by the holiday party. First, the holiday party was not held on Intelsat's corporate premises. *See Camalier v. Jeffries*, 340 N.C. 699, 460 S.E.2d 133 (1995) (holding that employee was not acting within scope of employment when attending party held at private home). Second, the holiday party was held from 8 p.m. to 1 a.m., outside of Intelsat's normal business hours. *See Chastain v. Litton Sys. Inc.*, 694 F.2d 957, 959 (4th Cir.1982) (reversing grant of defendant's grant of summary judgment motion in part because party began at 8:00 a.m.); *Camalier*, 460 S.E.2d at 133 (holding that employee was not acting within scope of employment at company party in part because party was held on the weekend). Third, no attendance was taken at the party, nor were invitees/employees paid for attending the party. *See Chastain*, 694 F.2d at 959 (noting that "employees were required to check [at party] in order to be paid for that day").

Fourth, no business-related meetings or transactions were consummated during the holiday party. Although plaintiffs cite the notes of the emcee, Veera Walker, as stating that Conny Kullman, an Intelsat executive, would give "[c]omments on 1999 and say some positive words about looking forward to 2000," this vague statement in an emcee's notes are insufficient for this Court to find that it would be a reasonable inference that any business-related interest was furthered at the holiday party other than those that would be incidental to any social gathering among co-workers.

Fifth, there was no expectation or requirement that defendant Aspillaga attend the holiday party. Although plaintiffs make much of the fact that Intelsat made prior arrangements to accommodate all Intelsat employees and their guests at the holiday party, this pre-planning on the part of Intelsat cannot support the inference that defendant Aspillaga's attendance at the party was required in any way; that is, there is no evidence to support the inference that there would be or that plaintiff Aspillaga expected that there would be any adverse consequence resulting from failure to attend the holiday party, or even that plaintiff Aspillaga's absence from the party would have been *noticed* by Intelsat executives. .

The facts cited by plaintiffs are insufficient for this Court to find that it would be reasonable to conclude that Intelsat's business interests were sufficiently furthered by the holiday party. Plaintiffs' first argument is that the pricing of the holiday party tickets shows that Intelsat had a business or commercial purpose. Intelsat employees and their guests were permitted to attend for free, contractors (like Aspillaga) and assigned agency temps were charged $70.00 per couple, and all other guests were charged $100.00 per person. These pricing variations, plaintiffs argue, show that Intelsat had a commercial interest in hosting the holiday party. Not only is plaintiff unable to cite any specific legal authority to support this argument, the Court finds plaintiffs' logic unpersuasive. It would be a proper and consistent practice in hosting a social event to defray the cost of the party for invitees. In this case, the amount of the subsidy depended on the invitee's relationship to Intelsat and other Intelsat employees. Regular employees and their guests were permitted to attend without cost, contractors, temps and their guests were partially subsidized, and other individuals who had no relationship to Intelsat but may have

chosen to attend for the food or raffle prizes were charged a rate higher than the actual per person cost to Intelsat. Rather than exposing any underlying commercial purpose, this practice is entirely consistent with a purely social event; if a private individual were hosting a birthday party, she would want to encourage attendance by friends and discourage attendance by strangers. Intelsat was following a similar rationale; there is no evidence to suggest that Intelsat was hosting this party for profit. The ticket pricing plan is insufficient for any reasonable juror to find Intelsat vicariously liable, particularly when viewed in light of the other facts showing the predominantly social purpose of the holiday party.

Plaintiffs next contend that Intelsat treated the cost of the holiday party as a business expense for internal and tax purposes. Contrary to plaintiff's assertions, there is no evidence supporting such an inference. The deposition testimony and the invoice cited by plaintiffs evidence only the cost of the party and the fact that Intelsat did pay for the party. These facts are uncontested, entirely consistent with a purely social event hosted by a corporation for its employees, and would not reasonably support an inference that the cost of the party was treated as a "business expense" or was deducted from Intelsat's taxes as such. Moreover, even if the cost of the party was treated as a business expense, this fact would be insufficient when compared to those facts supporting the purely social purpose of the Intelsat holiday party. *See Dickinson v. Edwards,* 105 Wash.2d 457, 716 P.2d 814, 820–21 (1986) ("[T]he deduction of banquet expenses as a business expense is not alone sufficient to present a question for the jury.").

Plaintiffs next argue that it is reasonable to infer that the holiday party was a com-

mercial event because Intelsat employees planned the holiday party and because Intelsat's senior management attended the party. As to the first fact, it is uncontested that there was a "holiday party planning committee" that was composed of Intelsat employees. Plaintiffs contend that they took time away from "normal" work activities, and this therefore shows that there was a corporate interest in hosting the party. Not only do plaintiffs fail to cite any legal authority for this argument, the Court finds this argument illogical; the mere fact that Intelsat employees planned the party-a common workplace practice-does not indicate any corporate interest in hosting the party. Indeed, it might support plaintiffs' argument more if Intelsat had hired outside experts to plan the party rather than leaving it to their own employees. As for the second argument-that the party furthered corporate interests because senior Intelsat executives attended the party-the Court finds the plaintiffs' argument unpersuasive. If the Court were to hold that a holiday party "furthered corporate interests" simply because the management of the corporation attended the holiday party, there would be very few corporate holiday parties that did not expose the employer to vicarious liability, and such a result would be contrary to this Court's interpretation of the applicable law. See Wadley v. Aspillaga, 163 F.Supp.2d 1, 9 (D.D.C.2001) ("[T]his Court is wary to conclude a holiday party could be construed as an event that would further Intelsat's business.").

Plaintiffs' next argument is that it would be reasonable to infer that Intelsat's commercial interests were furthered by the holiday party because the invitation list included Intelsat employees, contractors, and agency temps; because contractors and agency temps were invited, plaintiffs reason, Intelsat must have been nurturing relationships with the entities for whom the contractors and agency temporary workers were employed. To the contrary, plaintiffs' argument is insupportable. As legal precedent, plaintiffs cite Romeo v. Van Otterloo, 117 Mich.App. 333, 323 N.W.2d 693 (1982), and Boynton v. McKales, 139 Cal.App.2d 777, 294 P.2d 733 (1956). Romeo is clearly distinguishable because that court was addressing the question of vicarious liability where "defendant held a party for one of its corporate clients to further the business relationship with that client," Romeo, 323 N.W.2d at 693; under those facts, it is clear that the party was held to further corporate interests. Boynton also falls far short of persuasive. In that case, the employer threw a banquet for 33 employees who had been employees of the sales department for five years or more. Boynton, 294 P.2d at 741. In addition to the employees, "some representatives of the firms whose products [the employer] sold were invited." Id. In the instant case, the only individuals invited were those who worked at Intelsat's offices as a regular employee, a contractor, or a temporary employee. There is no evidence that Intelsat invited any customers or clients to whom Intelsat provided services or to whom Intelsat was attempting to provide services; there is no evidence that there was any business transaction discussed or consummated at the holiday party or as a result of the holiday party. Accordingly, it would not be reasonable to infer that the holiday party furthered corporate interests, aside from any benefits incidental to purely social interaction, from the fact that contract and temporary employees were invited to the holiday party.

Plaintiffs' last argument is that Intelsat and Prism, defendant Aspillaga's employer made "business decisions" as a result of the holiday party, and that this is evidence that the holiday party furthered corporate interests. The only evidence of a "business decision" in the wake of the holiday

party was the termination of defendant Aspillaga's contract with Intelsat. It would be ludicrous for this Court to conclude that it would be a reasonable inference that the holiday party "furthered business interests" because Intelsat chose to terminate the contract with defendant Aspillaga after he became intoxicated at the holiday party and killed Seth Wadley.

III.   Conclusion

Clearly, there is no genuine issue of material fact suggesting that any corporate interest that was furthered by the holiday party held by defendant Intelsat; the facts and arguments proffered by plaintiffs are immaterial, illogical, or conclusory. The Court accordingly finds that the holiday party was a purely social event, and defendant Intelsat is therefore not vicariously liable for the actions of defendant Aspillaga. For the reasons given in the foregoing analysis, the Court will GRANT defendant Intelsat's summary judgment motion.