Collins v. City of Manchester, et al. CV-01-409-JM  07/08/02  P

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>Craig Collins</u>

    v.

<u>City of Manchester and
Jean Roers, Individually</u>

Civil No. 01-409-JM
Opinion No. 2002 DNH 129

<u>**ORDER**</u>

In this action, the plaintiff, Craig Collins ("Plaintiff" or

"Collins"), alleges that Manchester Police Officer Jean Roers

("Defendant" or "Roers"), accompanied by her K-9 partner Cody

("K-9 Cody"), arrested Plaintiff on November 8, 1998 without

probable cause.  Plaintiff filed this action on October 31, 2001

against the City of Manchester, New Hampshire (the "City"), and

Roers pursuant to 42 U.S.C. § 1983 for violation of his right to

be free from unreasonable seizure secured by the Fourth and

Fourteenth Amendments to the U.S. Constitution.  Additionally,

Plaintiff brings various pendant State law claims in this

action.[1]  The Defendants have moved for summary judgment under

Rule 56 of the Federal Rules of Civil Procedure (document no. 7).

---

[1]Plaintiff's state law claims are based on false
imprisonment, malicious prosecution, battery, assault,
negligence, and violation of N.H. Rev. Stat. Ann. ("RSA") 466:19
(Remedies and Penalties for Injuries Done by Dogs).

For the reasons articulated below, Defendants' motion is granted with respect to Plaintiff's federal claims.

<u>Standard of Review</u>

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see</u> <u>Lehman v. Prudential Ins. Co. of Am.</u>, 74 F.3d 323, 327 (1st Cir. 1996). A genuine issue is one "that properly can be resolved only by a finder of fact because [it] . . . may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). A material fact is one that affects the outcome of the suit. <u>See</u> <u>id.</u> at 248.

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. <u>Id.</u> at 324.

In ruling on a motion for summary judgment, the court

construes the evidence in the light most favorable to the non-movant, resolving all inferences in its favor, and determines whether the moving party is entitled to judgment as a matter of law.  See Saenger Org. v. Nationwide Ins. Licensing Assocs., 119 F.3d 55, 57 (1st Cir. 1997).  The undisputed facts, viewed in the light most favorable to Plaintiff, are recited below.

### Background

A.    Initiation of the Search

At 8:15 p.m. on November 8, 1998, Roers and K-9 Cody responded to a call from the Hesser College Campus in Manchester, New Hampshire.  Upon arriving at the college, campus security informed Roers that they were searching for an individual identified as Hide Inga ("Inga").  Inga was allegedly a heavy supplier of marijuana and cocaine at the college.  According to campus security, Inga was present when one of Inga's roommates gave campus security permission to search the room.  When campus security came across a black bag, Inga grabbed the bag and fled.

Roers began searching for Inga in the vicinity of the college.  At 8:55 p.m., Roers stopped a car on West Mitchell Street, about one-half mile south of the campus, and spoke with two Hesser College students.  Those students informed Roers that

3

they were also looking for Inga.  The students believed that Inga was hiding in a wooded area near railroad tracks that are situated to the west of Hesser College.  Roers began walking north near the railroad tracks with K-9 Cody, who Roers had on a six-foot lead.[2]

Roers detected a strong odor of marijuana when she reached Sundial Avenue.  The area where the railroad tracks intersect Sundial Avenue is located just southwest of the Hesser College campus.  At that time, K-9 Cody began indicating to Roers that a person or persons was nearby.  While checking the area north of Sundial Avenue between the railroad tracks and the campus, K-9 Cody began to pull Roers to the west.  Roers followed K-9 Cody and was led down a five-foot drop off a cement wall to a wooded area between the railroad tracks and the campus.  K-9 Cody then gave Roers an even stronger indication that persons were present in the area.  Based on K-9 Cody's indication, Roers was convinced that one or more people were in the immediate area.

---

[2]Officer Roers testified at Collins' criminal trial that K-9 Cody is a certified tracking dog.  See Transcript of Collins' Criminal Trial for Docket No. 98-CR-09497 ("Collins Trans.") at 6:1-2.  She further testified that Cody attended 14 weeks of training, and that she and K-9 Cody were tested annually and certified to work together as a team.  Id. at 27:19-28:12.

4

B.    Collins and Santos

At this time, Plaintiff, a first-year student at Hesser College, and his friend Daniel Santos ("Santos") were sitting and talking on a large rock located about forty feet away from the parking lot of a Hesser College dormitory.  This rock, which is approximately four feet high and three feet wide, is located in an area of heavy brush southwest of the campus.

Roers and K-9 Cody had passed the area where Plaintiff and Santos were sitting when she crossed Sundial Avenue and proceeded north.  According to the testimony at the criminal trial, Roers and K-9 Cody passed within approximately 20 feet of Plaintiff and Santos.  However, Roers and K-9 Cody gave no indication that they knew that Plaintiff and Santos were there.  Similarly, Plaintiff and Santos were unaware that Roers and K-9 Cody had passed by.

Plaintiff first saw Roers and K-9 Cody walking south when they were approximately sixty to seventy feet north of his location.  Plaintiff recognized Roers to be a police officer in full uniform.  When Roers and K-9 Cody reached a point approximately forty to fifty feet north of where Plaintiff and Santos were located, K-9 Cody began to pull Roers toward the western woods.  Plaintiff observed K-9 Cody straining at the

leash and attempting to run into the woods away from Collins'
location.  Roers was facing into the woods west of the tracks and
shining a flashlight in that direction.

C.   The Arrest

As Roers faced west looking into the woods, she announced
that she was a Police Officer and that she had a police K-9 with
her.  She then stated that she knew that they were there and
advised them that they should come out or she would release her
K-9.  She further advised that the dog would find them and
apprehend them.  Roers did not know who or how many people were
in the woods when she made these announcements.  She also did not
know exactly where the suspects were.

Plaintiff heard Roers' announcements from his location.  At
no time did Roers or K-9 Cody face in Plaintiff's direction.
Roers and K-9 Cody were directed toward the woods to the west of
the railroad tracks.  Plaintiff and Santos were east of the
railroad tracks sitting on the rock.  Neither Plaintiff nor
Santos responded to Roers' announcements.

After seeing no response to her warnings, Roers released K-9
Cody from the lead to search the wooded area.  K-9 Cody ran into
the woods west of Roers' position.  Within a few moments K-9 Cody

circled around, crossed over the railroad tracks, and "apprehended" Plaintiff by means of biting and holding onto his left calf. K-9 Cody also bit Collins on his right knee. Roers heard Collins yell, and then spotted K-9 Cody, Collins and Santos behind the rock. Roers grabbed K-9 Cody by the collar and commanded the dog to release Collins. K-9 Cody did not immediately respond to Roers' command to release Collins.[3] But eventually Roers did get K-9 Cody to release him.

Roers escorted Collins and Santos out of the woods and onto Sundial Avenue. When back-up officers arrived, Collins and Santos were searched. Neither Collins nor Santos had any illegal drugs in their possession. Collins had rolling papers. When asked why he did not come out of the woods, Collins stated "I don't know." Collins acknowledged that he heard Roers' warnings. Santos allegedly admitted at the scene that he had been smoking a joint and was scared.[4] Collins denied having smoked any marijuana that evening. Collins and Santos were charged with

---

[3]Plaintiff claims that Roers had to hit K-9 Cody with her flashlight to get K-9 Cody to release him, which is an allegation disputed by Roers. Collins Trans. at 40:4-13.

[4]Collins testified at his criminal trial that Santos was smoking marijuana. See Collins Trans. at 43:5-7.

Resisting Arrest, a violation of RSA 642:2,[5] for refusing to come out of the woods when commanded by Roers. Collins was brought to Elliot Hospital in Manchester for treatment of the injuries he sustained while being apprehended by K-9 Cody.

D.   Collins' Criminal Case

Collins was prosecuted for the crime of Resisting Arrest in the Manchester District Court. His case was tried on April 15, 1999 before the Honorable William H. Lyons. After the State rested, Collins moved to dismiss. The court ruled that, taking the evidence in the light most favorable to the State, Collins' motion was denied at that time. Collins Trans. at 34:20-23. After the close of the evidence, the court took the matter under advisement. The next day the court issued an order finding that "the State has failed to satisfy its burden of proof as to each and every element of the offense," and thereby finding Collins not guilty of the crime charged. See Manchester District Court Order dated April 16, 1999 (Docket Number 98-CR-09497).

---

[5]RSA 642:2 provides that:

> A person is guilty of a misdemeanor when the person knowingly or purposely physically interferes with a person recognized to be a law enforcement official . . ., seeking to effect an arrest or detention of the person or another regardless of whether there is a legal basis for the arrest.

## Discussion

### A.   Elements of a 42 U.S.C. § 1983 Action

"The essential elements of a claim under section 1983 are: first, that the defendants acted under color of state law; and second, that the defendants' conduct worked a denial of rights secured by the Constitution or by federal law."  Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).  "The second element requires the plaintiff to prove not only a deprivation of federal right, but also that the defendant's conduct was a cause in fact of the alleged deprivation."  Soto v. Flores, 103 F.3d 1056, 1062 (1st Cir. 1997).

There is no dispute that the Defendants were acting under color of state law in this case.  By alleging that Roers arrested Collins without probable cause, Collins has sufficiently alleged facts that, if proven, caused Collins to be deprived of his constitutional right to liberty under the Fourth Amendment.  See Santiago v. Fenton, 891 F.2d 373, 383 (1st Cir. 1989) ("The Fourth Amendment right to be free from unreasonable seizures of the person demands that an arrest be supported by probable cause").  These allegations, together with Collins' prayer for money damages, adequately state a Section 1983 false arrest

claim.  See Iacobucci v. Boulter, 193 F.3d 14, 19 (1st Cir. 1999).

B.    Qualified Immunity

In this case the Defendants have raised the doctrine of qualified immunity as a defense.  The doctrine of qualified immunity "strives to balance [the] desire to compensate those whose rights are infringed by state actors with an equally compelling desire to shield public servants from undue interference in the performance of their duties and from threats of liability which, though unfounded, may nevertheless be unbearly disruptive."  Buenrostro v. Collazo, 973 F.2d 39, 42 (1st Cir. 1992).  In an action brought pursuant to 42 U.S.C. § 1983, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 5 (1st Cir. 1997).  In appropriate circumstances, government officials are entitled to "an immunity from suit rather than a mere defense to liability." Hunter v. Bryant, 502 U.S. 224, 227-28(1991) (per curiam).

10

Therefore, the issue of qualified immunity should be decided at the earliest possible stage.  Id.

In the context of Section 1983 claims based on alleged violation of Fourth Amendment rights, police officers are "entitled to immunity if a reasonable officer could have believed that probable cause existed."  Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992).  Officers are entitled to immunity even if it is later determined that there was no probable cause.  Hunter, 502 U.S. at 227; Rivera, 979 F.2d at 263.  Courts must evaluate whether the officer's belief that probable cause existed was "objectively reasonable."  Vargas-Badillo, 114 F.3d at 5; Santiago, 891 F.2d at 386; Bryant v. Noether, 163 F. Supp. 2d at 109.  Police officers are entitled to immunity for arrests "so long as the presence of probable cause is at least arguable."  Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985) (qualified immunity is unavailable only if it is clear that there was no probable cause at the time of the arrest).  The key issue in this case then is whether probable cause existed for Collins' arrest.

C.  Probable Cause

Probable cause exists when the "facts and circumstances within the police officers' knowledge and of which they had

reasonably trustworthy information were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." Rivera v. Murphy, 979 F.2d at 263 (internal citations, alterations, and quotes omitted); Fletcher v. Town of Clinton, 196 F.3d 41, 53 (1st Cir. 1999). The facts and circumstances within the officer's knowledge need not establish guilt beyond a reasonable doubt, make out a prima facie case, or even show that guilt is more probable than not. Bryant v. Noether, 163 F. Supp. 2d 98, 107 (D.N.H. 2001), quoting State v. Thorp, 116 N.H. 303, 307 (1976). "[I]f there are no factual disputes, or if the issue can be resolved based on the undisputed facts, the determination of whether probable cause existed is a question of law for the court to answer." Bryant v. Noether, 163 F. Supp. 2d at 108; see also, Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 7 (1st Cir. 2002) ("While the determination of facts relevant to probable cause is left to a factfinder, the existence of probable cause is ultimately a question of law to be decided by the court."); Topp v. Wolkowski, 994 F.2d 45, 48 (1st Cir. 1993) (reversing a district court's denial of a motion for summary judgment because the undisputed facts demonstrated that the defendant officers "could easily have believed that they had

12

probable cause" to arrest).

The undisputed facts include the following: (1) Roers was searching for a suspected drug dealer in a wooded area near the Hesser College campus; (2) Roers searched the area near the campus with K-9 Cody at nighttime; (3) Roers detected a strong odor of marijuana in the immediate vicinity where Plaintiff and Santos were found; (4) Roers did not know how many people were in the woods at that time or their precise location; (5) Roers warned whoever was in the woods to come out; (6) Plaintiff heard Roers' warning; (7) K-9 Cody located Collins and Santos within moments after Roers released him from the lead; (8) Collins stated "I don't know" when asked why he did not come out of the woods; (9) Santos had been smoking marijuana; and (10) Collins was found with rolling papers. These undisputed facts are sufficient to support a finding that Roers had an objectively reasonable basis to believe that probable cause existed to arrest Plaintiff. It is at least arguable, based on the foregoing, that Collins did not respond to Roers' announcements because Collins did not want to be discovered while engaged in drug activity.

Collins places much emphasis on his testimony at his criminal trial that K-9 Cody was "going crazy" and was "out of

13

control" on the night of his arrest. I find that these facts are not material to the probable cause inquiry. Even if Collins' assertions are taken as true,[6] that would not vitiate Roers' objective belief that probable cause existed for Collins' arrest. Roers smelled a strong marijuana odor in the area. She commanded whoever was in the woods to come out. She realized that Collins and Santos were located close enough to her that individuals with normal hearing would have heard her warnings. She heard Collins respond "I don't know" when asked why he did not come out of the woods. And she heard Santos' admission that he smoked marijuana that night. Even if the reliability of Cody's training or condition is in dispute, that does not detract from the independent facts available to Roers.

Similarly, Collins' argument that there was no reason for him to respond to Roers' commands to "come out" because all of Roers' attention was directed away from his location does not eliminate probable cause to arrest. The plaintiff's subjective view of the facts is not the test of whether the officer's actions were objectively reasonable. Fletcher, 196 F.3d at 51. I find, based on the undisputed facts, that Roers had an

---

[6]No evidence was presented pertaining to the manner in which a Manchester Police K-9 is trained to apprehend a drug suspect.

14

objectively reasonable basis to believe that probable cause existed for Collins' arrest.[7] Therefore, I further find that Roers is entitled to qualified immunity and is immune from liability on Plaintiff's Section 1983 claim.

D.    Municipal Liability Under 42 U.S.C. § 1983

In paragraph 34 of the Amended Complaint, Plaintiff states:

> the Defendants, jointly and severally, violated his right to remain free from unreasonable seizure, as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States of America and Title 48 U.S.C. § 1983 [sic], by their conduct causing and effectuating his warrantless arrest on November 8, 1998 without probable cause to take such action.

Plaintiff alleges that the City is liable under Section 1983 because the City "negligently, or with deliberate indifference to the rights of the Plaintiff" trained Roers and K-9 Cody, and "negligently supervised and certified" Roers and K-9 Cody causing the unconstitutional attack on and arrest of the Plaintiff. Am. Compl. Paras. 29-30. The Defendants contend that the City is

---

[7]Although the precise issue of whether there was probable cause for Collins' arrest was not litigated at Collins' criminal trial, Defendants contend that Collins should be collaterally estopped from re-litigating the issue of probable cause because the Manchester District Court denied Collins' motion to dismiss. In response, Collins argues that the doctrine of collateral estoppel does not apply in this context. I do not need to reach this issue since I find that the undisputed facts show the existence of probable cause to arrest.

entitled to summary judgment on Plaintiff's Section 1983 claim because there is no evidence that there was a policy or custom of failing to train or supervise officers.  Defs. Mem. at 10.

"[A] municipality cannot be held liable <u>solely</u> because it employs a tortfeasor --or in other words, a municipality cannot be held liable under § 1983 on a <u>respondeat superior</u> theory." <u>Monell v. New York City Dept. of Soc. Servs.</u>, 436 U.S. 658, 691 (1978); <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 385 (1989). A municipality may be found liable under 42 U.S.C. § 1983 only if the plaintiff's harm was caused by a constitutional violation and the municipality itself is responsible for that violation. <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 123 (1992).  In a Section 1983 action based on failure to train, the municipality may be liable if "it had a policy or custom of failing to train its employees and that failure caused the constitutional violation."  <u>Id.</u>  Inadequate training is only considered the cause of a constitutional tort if "the failure to train amounted to deliberate indifference to the rights of persons with whom the police come into contact."  <u>Id.</u>; <u>City of Canton</u>, 489 U.S. at 388.

Plaintiff put forth no evidence in his Answer that would

16

support his Section 1983 claim against the City.[8]  A party cannot rest on conclusory allegations in response to a motion for summary judgment.  If the moving party meets its initial burden of establishing that there is no genuine issue of material fact, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 841 (1st Cir. 1993) (nonmoving party may not rest upon mere allegations or denials in the pleadings in opposition to a motion for summary judgment).  There is no such evidence here.  Accordingly, I find that the City is entitled to summary judgment on Plaintiff's Section 1983 claim.

---

[8]In fact, Plaintiff does not address the merits of his Section 1983 claim against the City at all in his Answer.

## Conclusion

Defendants' motion for summary judgment (document no. 7) is granted with respect to Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's pendant state law claims. The Clerk of Court shall enter judgment in accordance with this Order and close the case.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: July 8, 2002

cc:    Robert J. Meagher, Esq.
       Bruce E. Kenna, Esq.

18